<hr />

## WILHELMINA D. BOWEN

### v.

## VIVIAN B. SMITH.

[Submitted November 5th, 1909.   Decided November 20th, 1909.]

1. Where the owner of land lays it out into streets and lots, and adopts a restrictive covenant regarding the location and use of buildings to be erected on the lots, with a view to secure the defined conditions named in the covenant for the benefit of the entire tract which he seeks to develop, and inserts the covenant in all deeds as a part of the defined scheme and as an exaction from all purchasers for the benefit of each purchaser, the equitable right to enforce the covenant enures to each purchaser, irrespective of the time of his purchase.

2. A restrictive building covenant in a deed of platted land, providing that it was the object of the covenants to secure and perpetuate the health, beauty and general improvement of the locality, and that it was expressly agreed that such covenants should run with the land, and that any subsequent conveyance should be made subject to the same covenants, &c., was a covenant for the benefit of the remaining portion of the grantor's land.

3. The record of a deed containing a restrictive building covenant was notice to all persons to whom the grantee's title subsequently passed.

4. The foreclosure of a mortgage, given by the grantee in a deed containing restrictive building covenants to the grantor, did not extinguish the notice given by the record of the deed that the grantee had bound himself and his heirs and assigns to the preservation of such covenants.

5. The equitable right to enforce restrictive building covenants may be lost by a degree of acquiescence in their violation amounting to an abandonment of the right of complainant.

6. A common grantor, who has parted with his title to a portion of the land for the benefit of which a restrictive covenant has been imposed on other land theretofore conveyed by him, may not thereafter release or modify the covenant so far as it operated to benefit the land previously conveyed.

7. Evidence *held* insufficient to show a loss by complainant of the right to enforce restrictive building covenants through failure to seek to enjoin the erection of certain buildings.

8. A covenant in a deed establishing a building line is valid.

---

On bill for injunction to enforce restrictive building covenants. Heard on application for a preliminary injunction.

*Messrs. Thompson & Cole,* for the complainant.

*Mr. John B. Slack,* for the defendant.

LEAMING, V. C.

It is settled in this state that when an owner of a tract of land lays it out into streets and lots and adopts a restrictive covenant with reference to the location and use of buildings to be erected on the lots with a view to secure the defined conditions named in the covenant for the benefit of the entire tract which he seeks to develop, and inserts the covenant in all deeds as a part of the defined scheme and as an exaction from all purchasers for the benefit of each purchaser, the equitable right to the enforcement of the covenant enures to each purchaser irre-

spective of the time of his purchase. See *DeGray* v. *Monmouth Beach Co., 50 N. J. Eq. (5 Dick.) 329; Morrow* v. *Hasselman, 69 N. J. Eq. (3 Robb.) 612; Barton* v. *Slifer, 72 N. J. Eq. (2 Buch.) 812.*

I think it unnecessary, however, to here · consider the evidence in this case to determine to what extent rights may have arisen through any scheme adopted by either the Chelsea Beach Company or the Chelsea Land and Improvement Company for the development of the tract along the lines of a defined general plan, for the deed made to William T. Runkle by the Chelsea Land and Improvement Company, which deed contains the covenants now in question and under which deed defendant derives his title, was made prior to the conveyance by that company to Edward Geschke, under which conveyance complainant now holds through sundry mesne conveyances. In such case the right of the subsequent purchaser of all or a part of the remaining land of the common grantor for the benefit of which the covenant was made to enforce the covenant against the prior grantee and his grantees with notice has long been recognized in this state. I think the law of this state in the aspect last referred to is accurately summarized by me in *McNichol* v. *Townsend, 73 N. J. Eq. (3 Buch.) 276,* as follows:

"The equitable grounds on which restrictions of this nature may be enforced at the instance of a subsequent grantee of the common grantor are well defined. One owning a tract of land may convey a portion of it, and by appropriate covenant or agreement may lawfully restrict the use of the part conveyed for the benefit of the unsold portion, providing that the nature of the restricted use is not contrary to principles of public policy. In such case a subsequent purchaser of all or a part of the remaining land for the benefit of which the stipulation was made may in equity enforce the observance of the stipulation against the prior grantee upon the principle that the rights created by such stipulation are transferable as part of the land to which they are attached (*Coudert* v. *Sayre, 46 N. J. Eq. (1 Dick.) 386*), and such subsequent purchaser may in equity enforce the stipulation against a person who holds title under the prior purchaser, who has acquired title, with notice of the restriction,

upon the principle which prevents a party having knowledge of the just rights of another from defeating such rights. *Brewer* v. *Marshall, 19 N. J. Eq.* (*4 C. E. Gr.*) *537, 542.* As no privity exists between the subsequent purchaser from the common grantor and the original grantee or the persons holding under him, the right of action is necessarily dependent upon the existence of the fact that the stipulation was originally made for the benefit of the remaining land of the common grantor." *Rogers* v. *Hosegood (1900), 2 Ch. 388, 404.*

The covenants contained in the conveyance from the Chelsea Land and Improvement Company to William T. Runkle, defendant's predecessor in title, must be regarded as a covenant made for the benefit of the remaining portion of the land of the grantor. The language of the covenant permits no other conclusion. It is:

"Under the subject, nevertheless, to the covenants and conditions contained herein, which are hereby made a part of the consideration of this conveyance and are accepted herewith by the party of the second part. * * * It being the object of these covenants and agreements to secure and perpetuate the health, beauty, ornamentation and general improvement of the locality; it is expressly understood and agreed that the said several covenants on the part of the said party of the second part, above specified, shall attach to and run with the land, and any subsequent conveyance of the premises herein conveyed shall be made subject to the same restrictions and covenants as herein set forth, which shall be made a part of the said transfer or sale, and so stated in every deed, and it shall be lawful not only for the said party of the first part, its successors and assigns, but also for the owner or owners of any lot or lots adjoining in the neighborhood of the premises hereby granted, deriving title through the said party of the first part, to institute and prosecute any proceedings at law or in equity against the person or persons violating or threatening to violate the same; it being understood, however, that this covenant is not to be enforced personally for damages against the said party of the second part, his heirs or assigns, unless he or they be the owner or owners of the said premises or of some part thereof at the time of a violation of the said covenant or of a threatened or attempted violation thereof; but the said covenant may be proceeded in for an injunction of and for a specific execution thereof against the said party of the second part, his heirs or assigns, and for damages against the party or parties violating the said covenant or their heirs, executors or assigns."

The deed to Runkle containing these covenants was duly recorded and the record afforded notice to all persons to whom

Runkle's title subsequently passed. *Brewer* v. *Marshall, 19 N.. J. Eq. (4 C. E. Gr.) 537, 541; Hayes* v. *Waverly and Passaic Railroad Co., 51 N. J. Eq. (6 Dick.) 345, 350.*

Complainant's deed does not contain any restrictive covenants, but his title emanates through the deed from the Chelsea Land and Improvement Company to Geschke, above referred to, and that deed, which was duly recorded, contained restrictive covenants which were exactly the same as the covenants contained in the Runkle deed except that part of the covenants touching the size of the lots. The title of Geschke was thereafter extinguished by the foreclosure of a mortgage executed by him to his grantor, the block of land being purchased at the foreclosure sale by the land company, and the lot now held by complainant was therefore sold without restrictive covenants to one Culbert and by Culbert to complainant. But the foreclosure of the Geschke mortgage did not extinguish the notice which the record of the Geschke deed gives that Geschke had bound himself and his heirs and assigns forever to the preservation of the covenants contained in his deed. The Geschke covenants can be enforced against complainant to the same extent as they could have been had the title not again passed through the land company, for the second holding of the lots by the land company was under the Geschke covenants.

In the Runkle deed the covenants say:

"It is expressly understood and agreed by and between the parties hereto that the dimensions of the lots herein conveyed shall not be reduced in size."

In the Geschke deed that part of the covenant touching the size of the lots is:

"It being expressly understood and agreed by and between the parties hereto that the dimensions of the lots herein conveyed shall not be reduced in size smaller than forty feet front by one hundred twenty-five feet in depth on Montpelier and Chelsea Avenues, nor smaller than forty feet by ninety feet on Baltic and Sunset Avenues."

This difference in the language of the covenants touching the size of the lots manifestly arises by reason of the fact that the

lots on the northwesterly side of Baltic (now Fairmount) ave-
nue formerly fronted on the streets running northwesterly and
southeasterly, the sides of the lots being on Baltic avenue. The
map which disclosed lots on the northwesterly side of Baltic
avenue as fronting on that avenue does not appear to have been
filed until March 4th, 1908, but as the Geschke deed of Novem-
ber 1st, 1902, contemplates these lots as fronting on Baltic
avenue, it seems manifest that the original plan as to the front-
age of these lots had been modified as early as that date. That
accounts for the change in that part of the covenant in the
Geschke deed. Otherwise the covenants are the same as in the
Runkle deed. It seems clear that this change in the frontage
of lots on the northwesterly side of Baltic avenue, whenever it
was made, could not operate to defeat complainant's right to
the enforcement of the restrictive covenants in defendant's chain
of title. Regarding the covenants in the Runkle deed as made
for the benefit of the remaining portion of the land of grantor
land company, I see no reason why that company could not
exercise the right to change the subdivisions of the remaining
portion of its lands to suit its purposes or even sell the remain-
ing lots without restrictive covenants without in any way lessen-
ing its right or the right of its grantees to enforce the Runkle
covenants. The theory upon which complainant's equitable
right to enforce the covenant in the Runkle deed is sustained is
set forth with great clearness in *Coudert* v. *Sayre, 46 N. J. Eq.
(1 Dick.) 386.* I think complainant's equitable right to enforce
the covenants in question is clear, unless it shall be found that
she has lost the right through her acquiescence or through the
acquiescence of her predecessors in title while owners of the lot
now owned by complainant in the violation of similar covenants
in other deeds.

The building which defendant is erecting is a brick building
within one foot of the front property line of defendant's lot.
The covenant in question is: "That no building shall at any time
be erected nearer than twenty feet of the front property line of
any street or avenue."

The lots of complainant and defendant are on opposite sides

of Baltic (now Fairmount) avenue and nearly opposite each other.

It is well settled that the equitable right to enforce restrictive covenants of this nature may be lost by a degree of acquiescence in their violation amounting to an abandonment of the right of complainant. In *Chelsea Land and Improvement Co.* v. *Adams, 71 N. J. Eq. (1 Buch.) 771,* Vice-Chancellor Bergen had occasion to say:

"If the original grantor of one hundred and fifty lots by deeds, with restrictions as to building lines, allows two-thirds of the grantees to violate it without protest, it cannot enforce it against a single grantee for the purpose of benefiting its remaining lands, for the grantee thus assailed is entitled to the common privileges accorded to other purchasers who are subject to like restrictions."

But the conditions stated in the language quoted differ radically from those presented by the present case. When a common grantor has parted with his title to a portion of the land for the benefit of which a restrictive covenant has been imposed on other land theretofore conveyed by the common grantor, it is not thereafter possible for the common grantor to release or modify the covenant, so far as it operated to confer a benefit on the land which he had previously conveyed. *Coudert* v. *Sayre, supra* (at *p. 396*). A town site proprietor, owning lots on various parts of the tract, may be directly interested in violations of such covenants upon any part of the entire tract and acquiescence on his part may appropriately deny to him the equitable right to enforce the covenants; but a violation of a restrictive covenant at a point on the tract distant from the lot of an individual lot owner may be of no interest whatever to such an owner and cannot appropriately call for affirmative action on his part. It seems to me clear that any claim of bar asserted against the rights of an owner of a single lot by reason of acquiescence in the violation of restrictive covenants of this nature must be measured in its force by the relation of the asserted violation to the individual lot. I am unable to discern any duty, the failure of performance of which should operate as an equitable bar, upon the part of an owner of a single lot on a tract of land similar to the one

now in question, to apply to the courts for the enforcement of restrictive covenants the violation of which in no appreciable manner affect such owner. This was, I think, the view entertained by Vice-Chancellor Emery in *Morrow* v. *Hasselman, 69 N. J. Eq. (3 Robb.) 612,* and this view was followed by me in *Barton* v. *Slifer, 72 N. J. Eq. (2 Buch.) 812,* and again in *Brigham* v. *Mulock Company, 74 N. J. Eq. (4 Buch.) 287.* It may also be noted that the covenants in the Runkle deed, under which defendant holds, are defined as for the improvement of the locality and in express terms give the right of enforcement in a court of equity to owners of lots in the neighborhood of the lot granted.

The covenants contained in the Runkle deed embody a great number of restrictions. In addition to the restrictions already referred to, there are restrictions fixing the minimum cost of any building to be erected on the lot; that the top of the first floor joists of any building except stables shall not be less than seven feet and not more than eight and one-half feet higher than the grade of the sidewalk level; that only one building for dwelling-house purposes shall be built on a lot; that certain enumerated uses of buildings shall not be permitted; that double buildings must cost at least a certain amount; the location of stables are defined; sundry other details are also provided touching the uses permitted of buildings to be erected. The affidavits filed in behalf of defendant disclose that fifty-seven houses have been erected and are in course of erection on the tract in question, and point out all instances in which violations of any of the covenants have occurred. These violations include seven instances in which the height of the first floor joists of buildings are not within the limits defined. One instance is noted where three lots have been converted into four lots, and another where a lot "seems to have been diminished in size." Two chimneys are shown to extend over the side line restriction. Several buildings are shown to be used for storage. One building is used as an apartment house. A building at No. 104 Sovereign avenue is one and eight-tenths feet over the front building line, and another building on the same avenue has a second story which projects over the front building line, and a building at 114 Chel-

sea avenue projects seven feet over the front building line, and some violations of the side and rear lines covenants are also shown. The location where the violations already referred to have occurred are given by street numbers, and I am unable to accurately locate them, but they are manifestly all far from the lot of complainant and in no way affect the desirability of complainant's lot. There is also a brick structure at the rear of the lot adjoining defendant's lot, which is used for building boats, and the location of the building appears to violate the covenants relating to rear and side lines, and at the front of that lot is a shed which extends to the property line. This is the only violation of the covenants in which I think complainant can be said to be reasonably concerned. From the description of the shed, I do not think it proper to regard it as a structure of such a permanent or substantial nature as to justify the conclusion that its existence should operate to deny to complainant the privilege of asserting his rights against defendant. The rear or side line encroachments of the brick building is necessarily a matter of little or no concern to complainant. Such encroachments are of little interest to persons other than owners of adjacent lots. There are also several houses' in process of erection on Sovereign avenue, northwesterly of Fairmount avenue, which extend five feet over the front building line. These buildings cannot reasonably concern complainant so far as the desirability of the property is concerned. Three buildings are also being erected on Fairmount avenue, southwesterly of Sovereign avenue, which extend five feet over the front building line. These are the only buildings on the avenue on which complainant's lot is situated which extend over the front building line, except the shed already referred to, and these buildings are now in process of erection. I do not think that complainant's rights against defendant can be properly considered as lost by reason of her failure up to this time to seek to enjoin the erection of the buildings last referred to. See *Bridgewater* v. *Ocean City Railway Co.,* 62 *N. J. Eq.* (17 *Dick.*) 276, 292; *affirmed,* 63 *N. J. Eq.* (18 *Dick.*) 798.

From this review of the facts touching violations of the covenants in the Runkle deed, it seems clear that there have been no such violations as have substantially changed the contemplated

character of the neighborhood or have defeated the general purposes sought to be accomplished by these covenants. The locality is that of a summer seaside resort. The general purpose of the covenants, as stated in the Runkle deed, is "to secure and perpetuate the health, beauty, ornamentation and general improvement of the locality." So far as the important covenant which requires buildings to be set back twenty feet from the front property line is concerned, it appears that of about fifty completed buildings now on the tract nearly all have respected that covenant. In this view it approaches a question of public as well as private concern that the spirit of this covenant made to preserve the health and comforts of the neighborhood be maintained.

I have thus far referred to the covenant touching the building line as one creating only an equitable right in complainant to enforce its observation. A reference to the terms of the covenant will disclose that it not only declares its purpose to be to protect the health and beauty of the locality, but by its terms it is declared that the covenant shall attach to and run with the land, and that it shall be lawful not only for the grantor and its successors and assigns, but also for the owner of any lot in the neighborhood deriving title from or through the grantor to institute proceedings at law or in equity against any person violating or threatening to violate the covenant, except only that no action at law for damages shall be maintained against the grantee or his heirs or assigns, unless he or they be the owner of the premises or of some part thereof at the time of the violation of the covenant. The present case is therefore one in which the parties to the Runkle deed have, by their stipulations, agreed that the lot conveyed shall, as to the front twenty feet thereof, become permanently burdened with an easement in favor of the surrounding property to the end that the twenty feet referred to shall never be built upon, but shall remain open for the health and beauty of the neighborhood. The covenant is expressly defined as running with the land and as conferring on all persons holding lots in the neighborhood under the grantor the right to enforce the covenant either at law or in equity.

I am not aware of any policy of law against the creation of

30

such an easement by the deliberative stipulation of the parties in interest. Indeed, covenants of this nature have been sustained and enforced when arising only by implication. See *Lennig* v. *Ocean City Association, 41 N. J. Eq. (14 Stew.) 606*. In this view complainant may be regarded as the owner of a legal estate, the existence of which is not in substantial dispute, and as now seeking in this court the preservation of that estate, and not merely as the owner of an equitable right unsupported by an interest in the land of defendant.

The application of complainant for relief was promptly made. I think I must take judicial notice of the fact that the bill was presented to me some days before the writ issued, and was thereafter redrafted by reason of certain errors of the stenographer who copied into the first bill erroneous data relating to the covenants.

I will advise a preliminary injunction against the construction of defendant's building nearer than twenty feet to the front property line.

As the other covenant here sought to be enforced relates to the use of the building, I see no necessity of considering that question at this time.