JULIUS KOCH

*v.*

LINA GORRUFLO.

[Decided February 18th, 1910.]

A covenant by a grantee not to use the premises for any other purpose except for a private residence, is violated by constructing a dwelling-house designed to accommodate two families and allowing two families to occupy the same.

On final hearing on bill, answer, replication and proofs.

*Mr. Frank Voigt* and *Mr. Frank E. Bradner,* for the complainant.

*Mr. Charles M. Mason,* for the defendant.

HOWELL, V. C.

This suit is brought for the purpose of enforcing a covenant restrictive of the use of lands. The Mutual Land and Improvement Company owned the lands on both sides of a street in Newark called Hedden Terrace, the whole of which they have now sold. The complainant and defendant, respectively, own parcels of this land. They derived their titles through different intermediary grantees so that there is no privity of estate between them. The covenant is sought to be enforced by virtue of what Vice-Chancellor Green called the right of amenity, in the case of *De Grey* v. *Monmouth Beach Club House, 50 N. J. Eq. (4 Dick.) 329.* The covenant sought to be enforced reads as follows:

"That the said party of the second part, his heirs and assigns, shall not at any time prior to the first day of January, which will be in the year nineteen hundred and twenty, carry on, procure, cause, permit or suffer to be carried on, prosecuted, employed or maintained upon said lands, or any part thereof, any saloon or place for the sale, storage or

other disposal of beers, wines or liquors, any manufacturing or other business of any kind whatsoever, nor use said premises for any other purposes except for a private residence and such stables and other out-buildings as may be needed or proper for use in connection with the use of said land for a private residence ; and further, that no house or dwell-ing shall be erected upon said lands to cost less than thirty-five hundred dollars, nor shall any house or other building be erected thereon of more than two and one-half stories in height, nor shall any dwelling or other building be erected thereon including any piazza or erection whatsoever within fifteen feet of the line of said Hedden Terrace, nor shall any outbuilding other than a dwelling-house, be erected upon said lands within seventy feet of the line of said Hedden Terrace, and further, that not more than one house shall be erected on said lands herein described ; and further, that the foundation wall of any house to be erected hereon shall not be raised to a height of more than seven feet above the curb line of said Hedden Terrace ; and it is further expressly understood and agreed that the said several covenants on the part of the said party of the second part above specified, shall attach to and run with the land, and it shall be lawful not only for the said party of the first part, its successors or assigns, but also for the owner or owners of any lot or lands adjoining or in the neighborhood of the premises hereby granted, deriving title from or through said party of the first part to institute and prosecute any proceedings at law or in equity against the person or persons violating or threatening to violate the same."

The complainant erected a dwelling-house upon the lot owned by him, taking care to preserve the restrictive covenant by the terms of which he claims always to have abided.

The defendant erected a dwelling-house upon her lot, and she and her witnesses claim that it was designed and constructed for occupation by two families, and that it is now and always has been what is known as a two-family house. Some time in the early part of 1909, and only a short time before the filing of the bill, she leased the first floor of the premises to a man named Fitzgerald, as a tenant. Fitzgerald subsequently moved out, and pending the suit a lease was made for the same portion of the premises to a man named Farrand, who is now occupying the same as tenant, and the question is whether the defendant has violated the restrictive covenant.

It was testified to that all the lots which were owned by the Mutual Land and Improvement Company were sold subject to the same set of restrictions, and that the restriction in question was contained in the titles of both the complainant and de-fendant.

I think it is quite clear that the defendant has violated the covenant contained in her deed. There is a very broad distinction between a private residence and a flat or apartment house. This distinction was very clearly made by Chancellor McGill in the case of *Skillman* v. *Smatheurst (1898), 57 N. J. Eq. (12 Dick.) 1.* There the covenant provided that the premises conveyed should not be used for any other purpose than a private dwelling or private dwellings. The defendants began the erection of a three-story frame flat house with five rooms on a floor, suitable for three families. The chancellor held that the buildings, which were in course of erection, were not private dwellings, and were therefore violative of the covenant which restricted the use of the land to the erection of private dwellings. This was followed by Vice-Chancellor Garrison in the case of *Lignot* v. *Jaekle, 65 Atl. Rep. 221.* It has been held in England that an effectual way of prohibiting every kind of business is to stipulate that buildings to be erected on the land shall not be used otherwise than as private dwelling-houses. A restriction of this character will prohibit a school (*Johnstone* v. *Hall (1856), 2 K. & J. 414*); or a charitable institution (*German* v. *Chapman, 7 C. D. 271*); or a boarding house for scholars (*Hobson* v. *Tulloch (1898), 1 Ch. 424*); or a studio (*Palman* v. *Harland, 17 C. D. 353*). In *Rogers* v. *Hosegood (1900), 2 Ch. 388; 69 L. J. Ch. 652*, it was held that where the covenant was that every house to be erected should be adapted for and used as and for a private residence only, is broken by the erection of a block of residential flats. In *Gannett* v. *Albree, 103 Mass. 372,* it was held that where a lease provided that the premises should be used strictly as a private dwelling, the condition is violated by the use of the premises as a public boarding house; and in New York, in *Levy* v. *Schreyer, 27 App. Div. 282,* it was held that a building constructed so that it can be occupied by three families living separate and apart is not a private dwelling within the provisions of a covenant not to erect any tenement house or any houses except private dwellings, and whether it was intended to be used by more than one family was immaterial.

The distinction between a private dwelling-house or a private residence on the one hand and a house built or occupied as a resi-

dence for two or more families is quite obvious. The house occupied by two or more families was called by Chancellor McGill, in the case above cited, a community house; the families living there occupy apartments separate and distinct from each other, and the house becomes not a private residence, as the term is used in its ordinary meaning, but a collection of apartments leased to different tenants, and if the defendant may be allowed to put two families in her house, where shall she stop? She would be as well entitled to put a family in each room and then claim that her property was being occupied as a private residence. The covenant in question gives no such privilege. It must be enforced in accordance with the principles above stated.

An injunction will issue to prevent the further violation of the covenant.