SCHADT *v.* BRILL.

1. DEEDS—RESTRICTIONS—NOTICE—VENDOR AND PURCHASER.
   The record of a deed from persons platting a subdivision containing restrictions as to the size and kind of buildings to be erected on the lots, is notice to a subsequent purchaser through an instrument of conveyance having no restrictions.

2. SAME—WAIVER.
   That another house, in violation of the building restrictions, had been constructed over a quarter of a mile away and across a 60-foot street, in a part of the subdivision not so exclusively residential, and that no one objected, did not operate as a waiver of complainant's rights.

3. SAME.
   A person owning property in restricted territory does not waive or lose his right to enforce restrictions when violation of them becomes especially injurious to him on the ground that he has previously omitted to protest against other violations or to insist on the observance of restrictive covenants in other portions of territory not particularly affecting him.

4. SAME.
   Under a restriction against the construction of stores, factories, or other buildings than a dwelling house with usual appurtenances, costing at least $5,000 and of not less than two and a half stories, the owner of a lot is prohibited from erecting a double house, with a single entry way, intended for the use of two families.

5. SAME—WORDS AND PHRASES.
   A dwelling house is the house in which a man lives with his family; a residence; the apartment or building or group of buildings occupied by a family as a place of residence; it is not two homes under one roof or a double house.

Appeal from Wayne; Hosmer, J.    Submitted January 29, 1913.    (Docket No. 123.)    Decided February 18, 1913.

Bill by Mary Schadt against Daniel Brill and another for an injunction against the violation of building restrictions.    From a decree for complainant, defendants appeal.    Affirmed.

*Louis C. Wurzer* and *Harry B. Keidan,* for complainant.

*George B. Greening,* for defendants.

Steere, C. J. In this case defendants have appealed from a decree of the circuit court of the county of Wayne, in chancery, enjoining them from erecting any double house, flat, or dwelling house building, intended, or suitable, for the separate occupancy of more than one family, upon lot 5, of the Whitney subdivision of part of private claim 678, fronting on the west side of Grand Boulevard East, in the city of Detroit. Said subdivision consists of 77 lots, 32 of which front on the west side of Grand Boulevard East, and 45 on the east side of Helen avenue, the next parallel street to the west. All deeds and land contracts given by the platters of said subdivision for any of said lots contained the following restrictions:

" This conveyance is made upon the express condition that no store, factory or building, other than a dwelling house with the usual appurtenances thereto, shall be erected upon the above-described premises, and that said premises shall be used for residence purposes only, and that no dwelling shall be erected thereon at a cost of less than $5,000, exclusive of the value of outbuildings and appurtenances thereto, and that such dwelling house shall not be less than two and one-half stories high, and shall have a brick or stone cellar under the whole thereof, and shall not be erected within twenty feet of the front or street line of said premises, and shall front or face the boulevard."

The testimony shows that the platters intended and advertised to make the Whitney subdivision an exclusive, high-grade, residential section of the city, to be occupied by attractive, private homes. The restrictions were generally, though not universally, understood, and interpreted in practical application, as permitting upon each lot nothing but a dwelling to accommodate a single family. Certain owners testify that was the controlling inducement in selecting this location for a home. All the lots

in said subdivision have been sold to individuals, and these restrictions, construed to mean a single dwelling on each lot, have been strictly observed by the purchasers, with one exception. The exception is a double dwelling erected at the northerly end of said subdivision on lot 29, near Mack avenue, approaching the business district, close to the car line and near a schoolhouse. It is over 1,400 feet from complainant's home, in another block; a street 60 feet wide separating the two blocks. There are no double houses, or other violations of the restrictions, in the block where complainant resides at the extreme northerly end of the subdivision on lot 1, and in which Brill is proposing to erect the structure in question.

Defendants are husband and wife. Defendant Daniel Brill purchased lot 5 from one August Peters, who had purchased it from the platters under a conveyance containing the restrictions above stated, but the deed from Peters to Brill omitted the restrictive covenant. The testimony shows, however, that Brill had knowledge of the same, both from an abstract of the title of his lot and from other sources, before he determined to erect the double house in controversy. It is undisputed that prior to the commencement of this suit Brill had procured plans for, and commenced building upon, lot 5 a double house (not intended for his own home) which was to be under one roof, with a single front entrance to a hall, from which entrances were to be provided to the separate establishments; otherwise to be separated in two distinct parts by a solid division wall from the basement up, each part planned for the convenient accommodation of a single family. The testimony of various witnesses, supported by properly proven photographs of the location, shows that, while there are yet lots unimproved, the section is being developed into a handsome, attractive, and desirable home residence district, the houses so far built being a fine class of single private dwellings costing from $5,000 to $14,000; that relatively high prices were paid for lots in the subdivision and due attention has been paid to orna-

mentation of environment, modern improvements, and conveniences; that these improvements, made in compliance with the restrictions imposed, have enhanced values, and permitting double houses to be erected there would change the character of the neighborhood, militate against the scheme of development, render the location less desirable and depreciate the same. This is denied by defendants, who claim the double house it is proposed to build will be more costly and attractive in appearance than some of the houses already constructed there.

While there is conflicting testimony on that subject, and also as to Brill's knowledge of existing conditions and restrictions, and of the circumstances under which he bought said lot 5, it being claimed and denied that he induced Peters to sell it under representations that he wished to secure it for the erection of a fine home thereon for himself in a residence district where only single dwellings were permitted, we regard those issues of minor importance, inasmuch as it is clearly manifest that he knew of such restrictions before he had perfected his plans and commenced building, and the record of Peters' deed from the platters, containing restrictive covenants running with the land, is notice of the same to all subsequent purchasers. *Bowen* v. *Smith*, 76 N. J. Eq. 456 (74 Atl. 675); *King* v. *Trust Co.*, 226 Mo. 351 (126 S. W. 415). The two controlling questions which the pleadings and proofs in this case present are:

(1) Does the previous construction of a double house on lot 29 in said district, without protest or interference by complainant, constitute a waiver of restrictions as to double houses, if such restrictions are imposed?

(2) Does the restrictive clause in the conveyances given by the platters of the property prohibit the erection of double houses?

It appears undisputed that the double house on lot 29 is the only one in the entire subdivision, that it is in another neighborhood, over a quarter of a mile distant from complainant's home, in a different block, with a street 60 feet

wide separating the blocks. Witnesses residing in the same block with complainant testified that said double house was so far away that its erection in no way affected or changed the general character of their block or neighborhood and it was of no interest to them. A witness named Rollinger, who resides in the same block as complainant, within a hundred feet of said lot 5, and who built a house upon the lot he purchased costing $12,000, testified:

"I certainly would not have built my dwelling there if I had understood there was going to be double houses there, and I bought with that understanding and idea. * * * It will certainly depreciate the value of my property if these double houses are permitted to be put up. Without question it would spoil the whole block. * * * There is only one double house that I know of in the entire subdivision, except the one being built by Mr. Brill, and that is surrounding vacant property up near Mack, across from the high school, and I should judge that it is about a couple of hundred or 300 feet from the next house, just guessing at it, the next dwelling. The double house that is going up there has not changed the character of the locality—of the block in which I live. I would not be interested up there. Mack avenue, where this house is, is a business district and right close to the car and across from the high school, and it is not so exclusive as down where I am. I don't think that down there would hurt us a particle unless Mr. Brill would put his up, and that would change the character of the district. Our block still retains its distinctive character as a private residence district."

Upon this subject, as applied to this case, we can well adopt the language of the court in *Bowen* v. *Smith, supra,* wherein it is said:

"A violation of a restrictive covenant at a point on the tract distant from the lot of an individual lot owner may be of no interest whatever to such an owner, and cannot appropriately call for affirmative action on his part. It seems to me clear that any claim of bar asserted against the rights of an owner of a single lot by reason of acquiescence in the violation of restrictive covenants of this nature must be measured in its force by the relation of

the asserted violation to the individual lot.   I am unable to discern any duty, the failure of performance of which should operate as an equitable bar, upon the part of an owner of a single lot on a tract of land similar to the one now in question, to apply to the courts for the enforcement of restrictive covenants, the violation of which in no appreciable manner affect such owner.   *   *   *   The violations are manifestly all far from the lot of complainant, and in no way affect the desirability of complainant's lot."

In that case there had been over 50 violations in different parts of the restricted district.

We find the law well settled to the effect that a person owning property in restricted territory does not waive or lose his right to enforce the restrictions where their violation becomes especially and personally offensive and injurious to him and his property, by reason of his previous omission to take notice of violations, and insist on observance of the covenants, in cases not affecting him or his interests, or the locality in which his property is situated. *Brigham* v. *H. G. Mulock Co.,* 74 N. J. Eq. 287 (70 Atl. 185); *McGuire* v. *Caskey,* 62 Ohio St. 419 (57 N. E. 53); *Stewart* v. *Finkelstone,* 206 Mass. 28 (92 N. E. 37, 28 L. R. A. [N. S.] 634, 138 Am. St. Rep. 370); *German* v. *Chapman,* L. R. 7 Ch. Div. 271; *Lattimer* v. *Livermore,* 72 N. Y. 174; *Landell* v. *Hamilton,* 175 Pa. 327 (34 Atl. 663, 34 L. R. A. 227); *Spahr* v. *Cape,* 143 Mo. App. 114 (122 S. W. 379); *McDougall* v. *Schneider,* 134 App. Div. (N. Y.) 208 (118 N. Y. Supp. 861); *Rowland* v. *Miller,* 139 N. Y. 93 (34 N. E. 765, 22 L. R. A. 182).

The remaining question to be considered is whether a proper construction of the restrictions in the deed prohibits the erection of double houses.   Brill himself testifies: "I figure putting up a nice double house with one entrance."   If we regard the strict definition of the term he uses, he figures on building two houses in a set together— a pair—a house multiplied by two, composed of two equivalent or corresponding parts, containing the same portion

of measure as to size, strength, etc., repeated. The fact that the proposed double house is to have one entrance, or be so designed externally as to resemble a single dwelling house, or more expensive, or of better architecture, is not of controlling significance. Buildings erected for apartment houses and flats often have a single front entrance, are generally more expensive than surrounding private residences, and, frequently, are of imposing and pleasing architecture. A double house is one step from the private home dwelling towards the latter class of places of abode, sometimes designated "community houses." The structure defendants propose to erect, standing alone, might not be in a sense unworthy of the neighborhood, but that is not the test in construing this restriction. If one can build a double house in that subdivision, all may do so. If permitted, it also opens the door to economize as to space and expenditure, thus by indirection evading the purpose of the minimum cost requirement. The restrictions in his deed prohibit the purchaser from erecting upon his lot any building "other than the dwelling house with the usual appurtenances," and no dwelling is to be erected thereon to cost less than $5,000. If "a dwelling house" means also a double house, the latter may be built for $5,000, with the result that each family in the restricted district is, in effect, permitted to reside in a $2,500 house on a half lot. And we see no reason for stopping there if defendant's contention is correct. If "a dwelling house," in the connection it is used, does not mean a house designed and constructed for the dwelling of a single family on each lot, a triple or quadruple house on each lot, designed for three or four families, if under one roof and with a single entrance, would be a departure from a single dwelling only in the degree of physical difference, and not in violation of any legal restriction. Furthermore, if the restrictions do not prohibit a double house, what legal purpose is served in feigning the external appearance of a single house by a single entrance and the style of architecture adopted? Either this restriction means one dwell-

ing for a single family on each lot, or there is no restriction except one house on each lot, designed to be a dwelling for as many families or persons as the owner sees fit, to cost not less than $5,000.   A "dwelling house" is—

"The house in which a man lives with his family; a residence; the apartment or building, or group of buildings, occupied by a family as a place of residence." Black's Law Dictionary.

Literally taken, this would seem to make each apartment in an apartment house "a dwelling house." Taking the restriction in its common, ordinary, and popular sense, applying the legal definition of "a dwelling house," and construing it in the light of the surrounding conditions and circumstances as proven, we conclude it was the intention to restrict buildings on each lot to a single dwelling, with its appurtenances.

We think this construction is in harmony with the principles announced in *Brigham* v. *H. G. Mulock Co.*, *supra,* wherein it is said:

"The covenant forbidding more than one building to be erected upon each lot for dwelling house purposes is, in my judgment, broken by the erection of what is commonly known as a double house—that is, two houses under one roof.   Such a structure is as much two buildings for dwelling house purposes as as though separate roofs existed."

Also the following cases decided by this court: *Harris* v. *Roraback*, 137 Mich. 292 (100 N. W. 391, 109 Am. St. Rep. 681); *Bagnall* v. *Young*, 151 Mich. 69 (114 N. W. 674).   In the latter case, which in principle is very similar to this, the following language is used:

"We decide that 'a two-story dwelling house' means, in this restriction, 'one two-story dwelling house' designed and used for a single dwelling, upon each lot."

The decree of the trial court is affirmed, with costs.

MOORE, McALVAY, BROOKE, STONE, and BIRD, JJ., concurred.