[Civ. No. 3013. Second Appellate District, Division Two.—November 21, 1919.]

## EVANGELINE D. WALKER, Appellant, v. MARY M. HASLETT et al., Respondents.

[1] DEEDS — RESTRICTIVE COVENANTS — WHEN ENFORCEABLE.—Restrictions on the use or mode of enjoyment of granted premises, made by the grantor in furtherance of a general plan of improvement, when reasonable and within the policy of the law, are valid and enforceable.

[2] ID.—EQUITY—INJUNCTION—PROOF OF DAMAGE NOT ESSENTIAL.— When clearly expressed, uniform restrictive covenants contained in deeds executed pursuant to a general plan of improvement and development for the benefit of all the lots in a tract will be strictly enforced, and a court of equity will decree an injunction, and this without any showing of actual damage or substantial injury.

[3] ID.—INTENTION OF PARTIES — EQUITY.—While restrictions against particular uses or modes of enjoying property held in fee are not favored, and doubts will, in general, be resolved against them, where the intention of the parties as determined from the language of the covenant itself, considered in the light of the entire context of the instrument and the circumstances existing at the time when the covenant is made, is clearly manifested in the creation of the restrictions, they will be enforced in a court of equity.

---

1. Validity of conditions and restrictions in deeds, notes, 95 Am. St. Rep. 214; L. R. A. 1918B, 696.

[4] ID. — FIRST-CLASS PRIVATE RESIDENCE — ERECTION OF DUPLEX BUILDING—VIOLATION OF COVENANT.—A covenant or restriction in a deed that "no building or structure whatever, other than a first-class private residence," shall be erected on the premises is violated by the construction thereon of what is commonly known as a "double" house, or a "duplex" or two-family residence, that can conveniently be used by two families living separate and apart from each other.

[5] ID.—BUILDING DESIGNED FOR TWO FAMILIES—NOT ONE PRIVATE RESIDENCE.—A building planned and designed for the residence or place of abode of two families cannot properly be described as one residence; neither can it be deemed to be a "private" residence nor a "private" dwelling.

[6] ID.—ACTION FOR INJUNCTION—RELIEF ALLOWABLE.—Where a deed contains a covenant that no building or structure, other than a first-class private residence, shall be erected on the premises prior to a given date and the grantee erects a building which, so far as outward appearances are concerned, answers the requirements of the covenant, but which as to the interior arrangement violates the covenant, the plaintiff in an action to enjoin the violation of the covenant is entitled to an injunction enjoining the defendant from using the premises for any purpose other than that of a private residence during the prescribed period, the decree to be without prejudice to the right of the defendant to move, at any time thereafter, for a modification or dissolution of the injunction should future changes in the condition of the neighborhood entitle defendant to such modification.

APPEAL from a judgment of the Superior Court of Los Angeles County. W. M. Conley, Judge. Reversed.

The facts are stated in the opinion of the court.

Loeb, Walker & Loeb for Appellant.

Haas & Dunnigan for Respondents.

FINLAYSON, P. J.—This is an action to enjoin the violation of a certain covenant or restriction in a deed to defendant Mary M. Haslett, whereby she covenanted that, until January 1, 1925, the premises granted to her shall be used for residence purposes only, that "no building or structure whatever, other than *a* first-class *private residence* of at least two full stories in height, with customary out-buildings, including a private garage, shall be erected, placed or permitted on said premises or any part thereof," and

that "any such residence shall cost and be fairly worth not less than five thousand dollars." The grantee constructed on the premises what is commonly known as a "double" house, or a "duplex" or two-family residence, that can conveniently be used by two families living entirely separate and apart from each other. The principal question is, Does the building violate the covenant not to erect, place, or permit on the premises any building other than a first-class "private residence"?

From a judgment declaring that defendants have not violated the restriction, and adjudging that plaintiff is not entitled to any relief whatever, this appeal is taken.

The defendant Haslett is the only interested defendant, and for that reason, as well as for brevity, we shall refer to her as the "defendant."

As we think the findings alone suffice to show that the judgment should be reversed and the lower court directed to enter a judgment in accordance with the views hereinafter set forth, we shall briefly summarize the facts as found by the court. Plaintiff and defendant are the owners, respectively, of lots in a tract of land in the city of Los Angeles that originally was owned by the Title Insurance & Trust Company. The tract was subdivided by the trust company into lots. Pursuant to a general plan of improvement and development for the benefit of all the lots in the tract, deeds to the lots were executed containing uniform restrictive covenants, one of which was the covenant here in question, namely, the covenant that no building other than a first-class "private residence" shall be erected, placed, or maintained on any lot. All the lots in the tract have been sold by the original owner. In each deed the grantee expressly covenants that the restrictions and covenants therein shall operate as covenants running with the land, and that the original grantor, or any of its successors or assignees, or any owner of any lot in the tract, may enjoin or abate, or remedy, by proper proceedings, the breach of any covenant. Prior to the construction of the building on defendant's lot she made application to the city for a building permit wherein she referred to the structure that she contemplated building as follows: "A double residence: Number of Families: Two." A permit, describing the building as it was thus described in the application,

was issued. Thereupon defendant began the construction of the building according to a written contract wherein the structure is described as "A double residence: Number of Families: Two." About four weeks after work was commenced plaintiff for the first time learned of the character of the structure that defendant was proposing to erect. Thereupon, "acting with due diligence," as the lower court finds, plaintiff duly notified defendant that the building, as proposed to be constructed, would be a violation of the restrictions and conditions in defendant's deed, and that if defendant proceeded with the erection of the building she would do so at her peril. Shortly thereafter, and notwithstanding such warning, defendant notified plaintiff that she would proceed with the construction of the building in accordance with her original plans. When summons was served on defendant the framework of the first floor had been erected, but no further work had been done. During the pendency of the action, but prior to the trial, and notwithstanding the warning which she had received before the action was commenced, as well as that afforded by the commencement of the action itself, defendant completed the building in accordance with the original design. The building, so the lower court finds, "is so designed and constructed that it can be conveniently used by two families, and if put to such use the families could, by reason of the construction of such building, live entirely separate and apart from each other." At no time prior to the trial of the action had the building been used by two families. The court found that "one of the two separate and distinct parts thereof had been used by a single family, and the other and distinct part thereof had not been occupied." The court found—doubtless because up to then only one of the two separate and distinct parts of the building had been occupied—that the building, "as now *used,*" constitutes "a strictly first-class private residence." We are of the opinion, however, that if the building, as *constructed,* was not a "private residence," plaintiff is entitled to relief, notwithstanding it may be now used and occupied by but one family.

[1] Restrictions on the use or mode of enjoyment of granted premises, made by the grantor in furtherance of a general plan of improvement, when reasonable and within

the policy of the law, are valid and enforceable.    (6 Am. & Eng. Ency. of Law, 2d ed., 513; *Firth* v. *Marovich,* 160 Cal. 257, [Ann. Cas. 1912D, 1190, 116 Pac. 729].)

[2] When clearly expressed, covenants of this description will be strictly enforced, and a court of equity will decree an injunction, and this without any showing of actual damage or substantial injury. The reason why no actual damage or substantial injury need be shown is that the owner of the land, when selling it to another, may insist on just such covenants as he pleases touching its use or mode of enjoyment. He has the right to define the injury for himself, and also for his grantees of the remaining lots in his tract, where he is subdividing a whole tract into lots and selling them pursuant to a general plan of improvement or development, and the purchaser of any lot contracting with him must abide by his definition of what shall be deemed to be an injury to the balance of the land. He, or any subsequent owner of any part of the remaining land for the benefit of which the restrictive covenant is made, may enforce the covenant when it is broken, and is not to be defeated by the opinion of any number of persons that the breach occasions no substantial injury. (*Hartman* v. *Wells,* 257 Ill. 167, [Ann. Cas. 1914A, p. 901, and note on p. 904 et seq., 100 N. E. 500]; *Kenwood L. Co.* v. *Hancock Inv. Co.,* 169 Mo. App. 715, [155 S. W. 861].)

[3] Restrictions against particular uses or modes of enjoying property held in fee, it is true, are not favored, and doubts will, in general, be resolved against them. But where the intention of the parties is clearly manifested in the creation of the restrictions, they will be enforced in a court of equity. The intention of the parties must be determined from the language of the covenant itself, considered in the light of the entire context of the instrument and the circumstances existing at the time when the covenant is made.

[4] The terms of the covenant relied on by the plaintiff here are clear and unmistakable. They forbid the erection or maintenance of a building, such as is here complained of, constructed for the use of two families living separately and apart from each other—a building usually described in the cases as a "double house" or a "duplex building." The covenant is that no building or structure whatever other than "*a* first-class private residence" shall be erected or

permitted on the premises; the restriction is to "a" private residence—in the singular, not the plural. There are authorities which hold that such a covenant forbids the erection on the premises of more than one dwelling-house or residence, and, therefore, prohibits the construction of a double house although it is all under one roof with a single entrance. (*Schadt* v. *Brill*, 173 Mich. 647, [45 L. R. A. (N. S.) 726, 139 N. W. 878] ; *Skillman* v. *Smatheurst*, 57 N. J. Eq. 1, [40 Atl. 855].)

It appears from the findings that the building is so constructed that it has "two separate and distinct parts," in each of which a family could live, and further that the two families could "live entirely separate and apart from each other." It is not clear from the findings whether the division of the building into two separate and distinct parts is horizontal or vertical. That is, it does not appear from the findings whether the "two separate and distinct parts" are arranged in flats or whether the structure is a double house divided vertically by a partition wall separating the two parts from each other and extending from the ground to the roof. However, regardless of any such uncertainty, if, as the lower court finds, the structure is divided into "two separate and distinct parts," in each of which a family can live entirely separate and apart from the family in the other part, then, whether the structure be divided horizontally or vertically, there are two residences on the premises, even though both be under one roof. Such a structure is as much two buildings for residence purposes as though separate roofs existed, and, if sanctioned, would enable the owner of the lot to violate, indirectly, the covenant in the deed that any residence erected on the lot "shall cost and be fairly worth not less than five thousand dollars." [5] A building planned and designed for the residence or place of abode of two families cannot properly be described as one residence. (*Gillis* v. *Bailey*, 21 N. H. 149; *Bagnall* v. *Young*, 151 Mich. 69, [114 N. W. 674]; *Harris* v. *Rordback*, 137 Mich. 293, [109 Am. St. Rep. 681, 100 N. W. 391]; *Koch* v. *Gorruflo*, 77 N. J. Eq. 172, [140 Am. St. Rep. 552, 75 Atl. 767]; *Skillman* v. *Smatheurst, supra; Brigham* v. *Murlock Co.*, 74 N. J. Eq. 287, [70 Atl. 185]; *Sanders* v. *Dixon*, 114 Mo. App. 229, [89 S. W. 577]; *Schadt* v. *Brill, supra,* and note thereto in 45 L. R. A. (N. S.), pp. 729, 735, 736; *Kingston* v. *Busch*, 176 Mich.

566, [142 N. W. 754]; *Misch* v. *Lehman,* 178 Mich. 225, [144 N. W. 556]; *Levy* v. *Schreyer,* 27 App. Div. 282, [50 N. Y. Supp. 584]; note to *Sayles* v. *Hall,* Ann. Cas. 1912D, · p. 478; *Ilford Park Estates* v. *Jacobs,* L. R. [1903] 2 Ch. 522, 1 B. R. C. 988, and note on p. 993 et seq.; *Rogers* v. *Hosegood,* L. R. [1900] 2 Ch. 388.)

It is not necessary, however, to place our decision upon a construction of the covenant in question that forbids the erection on the premises of more than a single residence. For the purposes of our decision we shall assume that the covenant does not restrict the grantee of the lot to the erection thereon of but one dwelling. But, even so, defendant has violated the covenant, for the building erected by her is not a *"private"* residence or a "private" dwelling, and the covenant clearly forbids the erection of any building other than a *"private* residence."

A house designed for the accommodation of more than one family cannot be deemed to be a "private" residence or a "private" dwelling. All the authorities agree that a "private" residence or a "private" dwelling is a building intended and designed for the convenient accommodation of but one family. (*Koch* v. *Gorruflo, supra; Skillman* v. *Smatheurst, supra; Levy* v. *Schreyer, supra,* affirmed, so far as this question is concerned, by the court of appeals in 177 N. Y. 293, [67 N. E. 598]; note to *Schadt* v. *Brill,* 45 L. R. A. (N. S.) 732.)

We have examined the several cases cited and relied on by counsel for defendant and find that in each of them the decision was governed by certain controlling facts which clearly distinguish it from the case at bar. Indeed, some are direct authority for the views expressed by us, notably the case of *Hunt* v. *Held,* 90 Ohio St. 280, [Ann. Cas. 1916C, 1051, L. R. A. 1915D, 543, 107 N. E. 765], where the court said that if, by the covenant there in question, "it had been intended that the building was to be for the use of one family only, words indicating such an intention would have been used, as is frequently done, such as . . . 'a private residence.' "

[6] The trial court did not find that the building erected by defendant was, *as constructed,* "a first-class private residence"; nor could it well have done so under the particular facts specifically found by it as to the structural character of the building. Instead it found that the build-

ing, *"as now used and occupied"*—it being then used and
occupied by but one family—constitutes a strictly first-class
private residence, and denied plaintiff any relief whatever.
Even though the structure may never have been used
by more than the one family, it does not, therefore, follow
that plaintiff should be turned out of court remediless. She
is entitled to an injunction enjoining defendant, during the
period covered by the covenant, from using the building
as a double or duplex house, or for any purpose other than
that of a private residence. (*Kenwood L. Co.* v. *Hancock
Inv. Co., supra; Cornish* v. *Weisman,* 56 N. J. Eq. 610, [35
Atl. 408].) And that is the extent of the relief to which
she is entitled. (*Levy* v. *Schreyer, supra,* decision of court
of appeals, 177 N. Y. 293, [69 N. E. 598]; *Lignot* v. *Jaekle,*
72 N. J. Eq. 233, [65 Atl. 221].) Defendant's building
answers the requirements of the covenant so far as outward
appearances are concerned. It does not offend in that re-
gard. It violates the covenant only in so far as the interior
arrangement is concerned. As was said by the New York
court of appeals in *Levy* v. *Schreyer, supra,* the departure
of the interior arrangement from the strict letter of the
covenant "may be remedied by the enjoining of its use
as . . . [a double house], or of using it for any other pur-
pose than that of a private residence or dwelling, without
ordering a destruction of the entire building."

The decree should provide that it shall be without preju-
dice to the right of defendant to move, at any time here-
after, for a modification or dissolution of the injunction.
This is because possible future changes in the condition of
the neighborhood may entitle defendant to a modification
or even a dissolution.

The judgment is reversed and the cause remanded, with
directions to the court below to enter a judgment, on the
findings, in accordance with the views expressed in this
opinion.

Sloane, J., and Thomas, J., concurred.

A petition to have the cause heard in the supreme court,
after judgment in the district court of appeal, was denied
by the supreme court on January 19, 1920.

All the Justices concurred.