[Civ. No. 13829. Second Dist., Div. Three. July 14, 1943.]

VIRGINIA W. MORGAN et al., Respondents, v. RUSSEL A. VEACH et al., Appellants.

John L. Wheeler for Appellants.

Max E. Gilmore and Albert E. Marks for Respondents.

WOOD (Parker), J.—In this action to enjoin the violation of building setback restrictions, plaintiffs obtained judgment requiring defendants to move the building erected by them in violation of the restrictions or to pay $1,000 damages.

The tract of land involved herein, consisting of 12 lots, included 10 hillside lots, the fronts of which adjoined a semi-circular street that extended up-grade in a northerly direction. Beginning at the southerly end of the tract and extending northerly, the lots fronting on that street were numbered from 1 to 10 inclusive. Generally stated, the lots faced as follows: lots 1, 2, 3, and 4, south; lots 5 and 6, southeast; and lots 7, 8, 9, and 10, east.

The lots owned by plaintiffs and the approximate values thereof were as follows: Raymond R. Morgan, lot 1 and house, $20,000; Karl and Edith Schneider, lot 2 and house, $23,000; Pauli Hoffman, lot 4 and house, value not stated; Virginia W. Morgan, lot 8 and house, $25,000; and Jean and Paul Carson, lot 9, vacant, $4,000. Defendants, husband and wife, owned lot 10, at the northerly end of the street.

All the parties held their lots under a deed which provided, pursuant to a general plan of improvement of said lots and tract, that the residences on the various lots "shall be placed not less than" the following mentioned distances from the front property lines of the lots: 45 feet on lots 1, 2, 3, and 4; 40 feet on lot 5; 35 feet on lot 6; 30 feet on lot 7; 25 feet on lot 8; and 20 feet on lots 9 and 10. The deed provided further that "no building . . . shall be erected or maintained within 5 feet of the sidelines of any of said lots nor any fence, wall or hedge nearer to the front line thereof than the setback hereinabove established or elsewhere thereon at a greater height than 5 feet"; and that said conditions "shall . . . terminate . . . after January 1, 1960. . . . Provided also that a breach of any of the foregoing conditions shall cause the lot . . . to revert to said grantor, or its successors . . . and as to the owner . . . of any other lot . . . the foregoing conditions shall operate as covenants running with the land, and a breach of any such covenants . . . may be enjoined, abated or remedied by said grantor . . . or by any such owner. . . ."

Defendants admitted in their answer that their residence did not comply with the restrictions, but denied that it was constructed in violation of them. They alleged further: (1) that plaintiffs' claims for injunctive relief were barred by laches on the part of plaintiffs, in that, when the action was commenced the house was substantially completed; (2) that plaintiff Pauli Hoffman constructed a house and a wall on lot 4 which did not conform with the restrictions, and there-

fore the claims of plaintiffs for injunctive relief were barred; and (3) that plaintiff Virginia W. Morgan maintained for many years a hedge on lot 8 between the southeasterly corner of the residence on lot 8 and the curb, which did not conform with the restrictions, and therefore the claims of plaintiffs for injunctive relief were barred.

On July 22, 1941, defendants received a deed to lot 10 which recited that the lot was subject to restrictions of record. On August 1st, defendants received a policy of title insurance which stated the number of the book and page of the official records wherein the restrictions appeared. Stakes and lines placed on lot 10 by defendants on July 15th to indicate the foundation lines remained in position until August 10th, when excavation was commenced. Construction of the cement foundation, started September 3rd, was finished September 13th. Erection of the rough framework of the building, commenced September 15th, was completed September 27th.

Defendant Russel A. Veach and plaintiff Raymond R. Morgan will be referred to hereinafter as the defendant and Morgan, respectively.

About September 21st, when some of the rough framework of the walls had been erected, a brother of plaintiff Morgan, who lived across the street from lot 10, told defendant that the house was too close to the front property line. On September 21st, plaintiff Morgan, who owned lot 1 and lived on lot 8 owned by his wife Virginia W. Morgan, noticed for the first time that defendant was building in violation of the restrictions; and on September 22nd (according to his testimony), or on September 29th (according to defendant's testimony), he said to defendant by telephone that the house was too close to the line and defendant was violating the restrictions. Defendant replied that his builder had told him he could build anywhere on the lot and he (defendant) thought he would go ahead as planned. About September 29th, defendant went to Morgan's office and told him: that he had found the restrictions as to the setback; that he did not know what he could do about it, since it would cost him more to relocate the house than he had expended at that time; and that he was going ahead with the building anyway. Morgan replied that if he did go ahead, he (Morgan) would have to do something about it and try to stop him legally. About October 1st, Morgan's attorney sent a letter to defendant, which

reached him October 15th or 16th, stating that unless defendant complied with the restrictions, relief would be sought from the courts. Thereafter and during October, the rough plumbing, the fireplace, cabinets, paper and netting on the outside for stucco, and plaster board on the inside, were installed. This action was commenced on October 31, 1941. On November 1st, a temporary restraining order was served on defendants. At that time the house was ready for the outside stucco and the inside plaster. Within a week after the temporary restraining order was dissolved, defendant resumed work on the house, and, according to his statement, he proceeded to complete it ''in a hurry'' because materials were hard to get. The house was completed on December 24th. The cost of the house. not including the lot, was about $10,000.

The front property lines of the lots are 8 feet from the street curb, and there is no sidewalk. The garage on defendants' lot is ''a part of the main residence,'' as required by the restrictions, and adjoins the house at the front on the south side. Defendants' house, instead of being at least 20 feet from the front property line, is the following distances from the front property line: the northerly corner of the house, 8.2 feet; the northeast corner of the garage, 13.65 feet; and the southeast corner of the garage, 21.7 feet. Defendants' house, instead of being 5 feet from the lot sidelines, is the following distances from the sidelines of lot 10: the north side, 3.8 feet; and the south side, 3.5 feet.

The trial court found that defendants' residence did not comply with said restrictions, particularly in that said building was placed less than 20 feet from the front property line of lot 10; that about September 21, 1941, plaintiffs caused defendants to be notified of the fact that defendants were constructing a building which did not conform with the setback restrictions; that notwithstanding said fact and notice defendants continued with and completed the construction of said building in violation of said restrictions and covenants; that said violations by defendants caused damage to plaintiffs, and the beauty and symmetry of the plan of improvement of the tract was diminished; that there was no laches on the part of plaintiffs; that it was not true that the building constructed on lot 4 by plaintiff Hoffman, and the building constructed on lot 8 by plaintiff Virginia W. Morgan, did not conform with said restrictions.

■ The first contention of defendants is that the trial court abused its discretion in granting the injunction. They assert "that while the defendants' residence building was constructed in violation of the restrictions in that the residence was set too close to the front property line, such construction was the result of inadvertence and mistake upon the part of defendants." They state that the inadvertence and mistake occurred by reason of the following: that the real estate agent who sold the lot told them the curb was the front line of the lot, and they could build anywhere on the lot, except within 5 feet of the south line; that the deed received by defendants did not specifically set forth any restrictions; that the lot was on a steep hillside and there was no sidewalk or trees in the space of 8 feet between the curb and the front property line, dedicated to the city, to indicate the front line was not the curb; that the garage on the lot north of lot 10 (which was not in the tract involved) was closer to the curb than defendants' house; and that lot 9, to the south of defendants' lot was vacant, and the street between the Morgan house on lot 8, and defendants' lot 10 curved appreciably into the hill.

The matters just referred to, standing alone, might indicate inadvertence and mistake, but there were other circumstances to be considered by the trial court. It is difficult to understand why defendant relied upon the agent for information regarding the restrictions when authoritative information was available, as indicated by references to the restrictions in the deed and policy of title insurance received by defendants before the building was commenced. Although he might have acted inadvertently prior to the time he was notified by Morgan's brother and by Morgan that he was building too close to the line, thereafter he proceeded with knowledge that the restrictions required a setback of not less than 20 feet and with knowledge that his building was considerably less than 20 feet from the line. At the time he was so notified, the expense of changing the location of the house would have been between $1,500 and $2,000. Defendant did not heed the notices, declared his intention on two occasions to proceed without complying with the setback restrictions, and proceeded "in a hurry" to complete the house irrespective of said oral notices and a written demand by Morgan's attorney that he comply with the restrictions, and irrespective of pending litigation to prohibit him. Although defendant stated that he relied upon

the agent for information as to the restrictions and the agent told him the building should not be within 5 feet of the south line, it is to be noted that defendant violated even that restriction and built the house $3\frac{1}{2}$ feet from the south line. There was evidence that defendant intended in the first instance to build farther back on the lot but he changed his mind in order to have more space in the back yard. The construction in violation of the restrictions, at least after the foundation was in, was not the result of inadvertence or mistake.

Defendants assert further, as a part of their argument that the court abused its discretion in granting the injunction, that, although the plaintiffs Morgan were in a position at all times to observe the proposed location of the house, a period of more than two months elapsed before defendant was advised the restrictions were being violated, that plaintiffs permitted defendant to continue the construction until the latter part of October, when the house was substantially completed, without bringing to his attention their determination to require compliance with the restrictions; and that while such failure of plaintiffs to act might not have constituted laches the elements of estoppel were present and the issuance of an injunction worked an inequitable burden on defendants. By reason of the hillside character of defendants' lot, the terraces thereon, and the curve of the street, it was difficult for persons who were not on defendants' lot and were not builders to determine, before the walls were started, whether the restrictions were being violated.

Plaintiffs were not required, at the risk of waiving a violation of restrictions by defendants, to scrutinize the activities of defendant to ascertain whether he was violating the restrictions. At a time, however, when Morgan could first determine with reasonable certainty, without being upon the lot, that the restrictions were being violated, that is when the walls were started, he notified defendant immediately that he objected to the violation. In response to defendant's statement that he would go ahead as planned, plaintiff Morgan stated he would try to stop him legally. The position of Morgan that he would insist upon compliance with the restrictions was placed before defendant definitely and promptly when he ascertained the facts. The claim of laches or estoppel cannot be sustained.

An appropriate statement relative to defendants' assertion that an injunction would work an inequitable burden is in 28 Am.Jur., section 56, page 253 as follows: ''In view of

the drastic character of mandatory injunctions, the rule under consideration as to balancing the relative conveniences of the parties applies with special force to a prayer for such mandatory relief. Where, therefore, by innocent mistake or oversight, buildings erected . . . slightly encroach . . . and the damage to the owner of the buildings by their removal would be greatly disproportionate to the injury . . . the court may decline to order their removal. . . . But relief by way of a mandatory injunction will not be denied on the ground that the loss caused by it will be disproportionate to the good accomplished, where it appears that the defendant acted with a full knowledge of the complainant's rights and with an understanding of the consequences which might ensue. . . . ''

In a note in 57 A.L.R., first column, page 343, it was said: ''Wilfulness on the part of the defendant in proceeding with the violation of the restriction after warning by the complainant, especially after suit is brought, is a ground for equitable relief by mandatory injunction greatly stressed by the courts. Thus, one who deliberately violates building restrictions placed upon his lot for the benefit of a district in a city cannot avoid a mandatory injunction so to build as to comply with the restrictions, on the theory that the loss caused by it will be disproportionate to the good accomplished.'' The case of *Stewart* v. *Finkelstone*, (1910) 206 Mass. 28 [92 N.E. 37, 40, 138 Am.St.Rep. 370, 28 L.R.A.N.S. 634] cited in support of that statement, stated at page 38: ''It is strongly urged that a mandatory injunction ought not to issue, for the reason that it would . . . impose on the defendant a loss disproportionate to the good it can accomplish. . . . This remedy . . . in cases proper for its exercise . . . ought not to be withheld merely for the reason that it will cause pecuniary loss. It has been found that the defendant with full knowledge of the restrictions 'deliberately attempted' to override them, and thus to deprive the district of the character given it by the restrictions. He took his chances as to the effect of his conduct with eyes open to the results which might ensue. It has been the practice of courts to issue mandatory injunctions upon similar facts.''

Defendants assert also, under their point concerning abuse of discretion in granting the injunction, that plaintiffs did not prove any damages. In *Walker* v. *Haslett*, (1919) 44 Cal.App. 394 [186 P. 622], it was said at page 398: ''When clearly expressed, covenants of this description will be strictly

enforced, and a court of equity will decree an injunction, and this without any showing of actual damage or substantial injury. . . . He [owner] has the right to define the injury for himself, and also for his grantees of the remaining lots. . . . He, or any subsequent owner . . . may enforce the covenant when it is broken, and is not to be defeated by the opinion of any number of persons that the breach occasions no substantial injury.'' It was said in *Joyce* v. *Krupp*, (1927) 83 Cal. App. 391 [257 P. 124], at the bottom of page 398: ''Where equitable relief is sought, proof of actual or substantial injury is not essential, the establishment of a violation of a uniform building restriction being all that is necessary to entitle a complaining owner to relief. . . .'' ''The propriety of affording equitable relief by injunction rests in the sound discretion of the trial court to be exercised according to the circumstances and exigencies of each particular case.'' (*Diederichsen* v. *Sutch*, (1941) 47 Cal.App.2d 646, 649 [118 P.2d 863].) The court did not abuse its discretion.

The second contention of defendants is that equitable relief should not be granted to one who has violated restrictions. They assert that plaintiff Virginia W. Morgan violated restrictions as to lot 8 in that she maintained a hedge about 7 feet in height on the south side of her house. A witness called by defendants testified to that effect. Morgan testified that there was a line of shrubs, but not a solid line, between the curb and the southeast corner of the house; that the shrubs were not on the Morgan property; that they were not a hedge; that he planted them on the adjoining lot 7, with the permission of the owner; and that he could remove them in 10 minutes. The court found that it was not true that the building on lot 8 did not conform with the restrictions. No finding was made concerning the hedge or shrubbery, but the finding that the building was not in violation of the restrictions should be regarded, in view of the judgment, as a general finding sufficient to include the item of landscaping. They also assert that plaintiff Hoffman violated the restrictions as to lot 4, in that a wall which extended across the premises was 40 feet from the curb instead of being not less than 45 feet from the property line, as required by the restrictions. Morgan testified that the part of the premises referred to as a wall was landscape gardening to hold up flower beds. Defendants also contended that a corner of the Hoffman garage

was 2 feet closer to the property line than was permitted by the restrictions. The garage adjoined the residence building, as required by the restrictions, and was a part of it. The court found that it was not true that the building on lot 4 did not conform with the restrictions. No special finding was made concerning the wall or the garage. There was no allegation in the answer referring specially to the garage. The general finding concerning the building included the garage and was sufficient, in view of the judgment, to include also a determination that the portion of the premises referred to as a wall or a part of a flower bed was not a violation.

█ Furthermore, it was not alleged that any of the plaintiffs other than the owners of lots 10 and 4 violated the restrictions. Defendants did contend, however, that a hedge on lot 2 which the owner, Mrs. Schneider, said was 1 foot high, was a violation. Even assuming that some of the plaintiffs had violated the restrictions, the other plaintiffs would not by reason thereof be prevented from obtaining injunctive relief, if they were otherwise entitled to it and had no knowledge that the restrictions had been violated by any person other than defendants. (*Alderson* v. *Cutting,* (1912) 163 Cal. 503, 506 [126 P. 157, Ann.Cas. 1914A 1].)

█ The third contention of defendants is that damages cannot be awarded as an alternative when only injunctive relief was sought in the complaint. Their argument is that plaintiffs sought only injunctive relief in the complaint and did not establish any facts upon which the court could award damages. The complaint was labeled ''Complaint for Injunction,'' did not include a prayer for damages, but did allege that said violations by defendants caused great damage to plaintiffs, and included a prayer for general relief. ''The subject matter of an action and the issues involved are determinable from the facts pleaded, rather than from the title or prayer for relief.'' (*Standard Brands of California* v. *Bryce,* (1934) 1 Cal.2d 718, 721 [37 P.2d 446].) The case was tried upon the theory that the amount of damages was involved. Plaintiffs and defendants called witnesses who testified concerning damages. The trial judge stated just before the case was submitted that he did not know how much he would allow as damages or whether he would make an alternative judgment. At the time the judge made that statement defendants did not indicate in any way that they considered the amount of damages was not involved. The amount of damages

was an issue in the trial. At the beginning of the trial the parties requested the trial judge to view the property involved, and the judge stated he would do so after testimony had been received. At the close of the trial the judge stated that plaintiffs were entitled to a remedy, that he had not looked at the premises and had not indicated "how much he would allow"—whether a stated amount or "an alternative judgment to move the house back" or allow damages, and he would look at the property before he made up his mind. The record does not show that the judge did not view the property, and it will be assumed that he did view it. In the case of *Rose* v. *State of California*, (1942) 19 Cal.2d 713 [123 P.2d 505], which was a condemnation case in which the judge determined the amount of damages, it was stated at page 733: "That the trial judge is not bound by the opinion of the witnesses on market value is well settled. . . . Furthermore, in the instant case the trial judge visited the premises, and the information so obtained 'is independent evidence that can be taken into consideration in determining the issue of the case.' "

Defendants also argue that the court in awarding $1,000 damages found that plaintiffs' injury was compensable, and therefore they had an adequate remedy at law and injunctive relief should have been denied. It can be argued with equal force that the fact that injunctive relief was granted was a finding that the injury was not compensable. An alternative judgment was rendered in the case of *Carey* v. *Bowie*, (1933) 130 Cal.App. 400 [19 P.2d 1032], which required defendants to remove a part of their dwelling, in order to comply with building restrictions, to a point not less than 4 feet from the property line, or to pay $1,000 damages. On appeal by defendants the judgment was affirmed. The alternative form of the judgment, however, was not discussed in the opinion. The attorney for defendants herein correctly states that it does not appear from the opinion therein that alternative relief was not prayed for. The transcript in the cited case is not available, but the respondent's brief therein stated, "Plaintiff prayed for a mandatory injunction compelling the removal of the offending addition, for damages in the sum of One Thousand Dollars ($1,000), and for general relief." It therefore appears that alternative relief was not prayed for in the complaint in the cited case in which an alternative judgment was rendered. It is true that was not a

case wherein injunctive relief only was sought, but it is also true that alternative relief was not sought therein. The awarding of damages in the present case, however, did not indicate that the injunction should not have been granted. The circumstances in the case at bar were such that the court was required to grant the mandatory injunction. The defendant deliberately proceeded, after notices and protests, to construct his building in violation of the restrictions with full knowledge that he was violating them and in total disregard of the notices and protests of the owners of other lots. The encroachment by defendants within the restricted distance from the property line was not slight, but was great. At one place defendants' building extended about 12 feet into the restricted area. The evidence shows that the expense of moving the house after the foundation was in would have been between $1,500 and $2,000. Of course, after the house was completed, the expense of moving it would be considerably more. The mandatory injunction having been required by the evidence, and having been granted, the alternative part of the judgment whereby defendants were granted the privilege of paying $1,000 damages in lieu of complying with the restrictions, was therefore a ruling very much in favor of defendants. The position of defendants is, therefore, that they are objecting to a part of the judgment which, under the circumstances, is favorable to them. The plaintiffs have not appealed from that portion of the judgment. It is not necessary, however, to decide herein either of the questions as to the propriety of an alternative judgment for damages or as to the sufficiency of the evidence to support the award of damages. The judgment of injunction was supported by the findings and the evidence, and it was not necessary, as above shown, that any specific amount of damage be proved as a basis for the injunction. The alternative part of the judgment which permits the defendants to evade the injunction by paying $1,000 was not based upon a finding of damages in that amount, for there was no such finding. The absence of such a finding is a sufficient answer to defendants' contention that the award of damages shows a case where plaintiffs can be adequately compensated in damages and hence no injunction should be granted. ■ The alternative, allowing payment of $1,000, apparently was an act of grace toward the defendants, and was based upon nothing appearing in the findings. If it was an error, it was in favor of defendants. The evidence clearly

shows, and defendants concede, that it would cost them much more than $1,000 to comply with the injunction. The alternative allowing the payment of damages being in defendants' favor, they cannot complain of it on this appeal. (2 Cal.Jur. 841; *Irvine* v. *MacGregor,* (1928) 203 Cal. 583, 586 [265 P. 218].)

Defendants also contend that they have been deprived of a jury trial upon the issue of damages because the complaint did not include an issue as to damages, and there was no issue upon which they could base a request for a jury. As above stated, the case was tried upon the theory that the issue of damages was involved. Also as above shown, if injunctive relief was the only issue (as defendants contend), proof of actual or substantial injury was not essential. (*Joyce* v. *Krupp, supra.*) Defendants did not suggest at any time when the matter of damages was being presented by plaintiffs and themselves that defendants desired a jury trial. Furthermore, when the judge stated at the close of the case that he might allow damages, no indication was made by defendants that they desired a trial by jury if damages were to be allowed. Under such circumstances defendants' contention that they were deprived of a jury trial cannot be sustained.

The judgment is affirmed.

Shinn, Acting P. J., and Shaw, J. pro tem., concurred.