[Civ. No. 29123.   Second Dist., Div. Two.   Feb. 18, 1966.]

NICK LIBERIO et al., Plaintiffs and Respondents, v. VICTOR J. VIDAL et al., Defendants and Appellants.

VICTOR J. VIDAL et al., Plaintiffs and Appellants, v. NICK LIBERIO et al., Defendants and Respondents.

(Consolidated Cases.)

Eldon J. Koorstad for Defendants and Appellants and for Plaintiffs and Appellants.

Block, Toler, Bulloch & Biggerstaff and Lloyd A. Bulloch for Plaintiffs and Respondents and for Defendants and Respondents.

ROTH, P. J.—Because of ill health, respondent Nick Liberio, owner of Nancy's Liquor Store and Delicatessen (Nancy's) in Compton, California, contracted with appellant Victor Vidal to employ the latter as manager of the store. The contract, executed on July 1, 1959, required appellant to manage the store on a full-time basis and to handle certain administrative operations in a specified manner. Among other things, the contract provided that an inventory should be taken on July 1, 1959, and that "At all times VIDAL shall keep and maintain the inventories of Nancy's at at least the retail value thereof as shown on the July 1, 1959 inventory. At any time such inventories fall below that of July 1, 1959, VIDAL shall maintain cash reserves on deposit in LIBERIO's bank account . . . which together with inventories on hand at retail equal a total cash value as great or greater than the total retail cash value of the July 1, 1959 inventory."

The agreement required appellant to pay to Liberio $1,000 per month from the business bank account, and appellant agreed "to operate said business so that such funds shall always be available to make these withdrawals as herein provided."

Appellant's compensation was a guaranteed $150 weekly plus any profits of the business remaining after Liberio's salary and other expenses were paid. The inventory was to be maintained at all times as required by the agreement.

The agreement provided in paragraph (12) thereof:

"VIDAL shall be liable . . . for any and all losses suffered

by Liberio as a result of any breach or violation of this agreement by Vidal, including but not limited to the loss of Liberio's off sale liquor license due to fault or act of commission or "omission" by Vidal."

Paragraph (13) provides:

"In order to secure loss of Liberio's off sale liquor license due to fault or act of commission or omission by Vidal, or other loss occurring hereunder, Vidal shall execute a trust deed upon [certain property owned by Vidal] securing any loss to Liberio hereinabove mentioned up to but not exceeding the principal sum of Thirteen Thousand Dollars. . . ."

On February 28, 1961, after a period of 20 months, appellant's employment was terminated, and an accounting was made of the business which revealed substantial shortages in inventory and cash. Respondent thereupon filed this action for an amount equal to the shortages and to foreclose on the trust deed given by appellant as security for breach.

Appellant answered and concurrently filed a suit for declaratory relief. The two actions were consolidated for trial.

Prior to trial, the matter was submitted to a referee, whose report analyzed and coordinated the conflicting assessments of the status of the business made by the expert accountants retained by each party in the litigation. At trial, there was considerable evidence of unrecorded sales and gifts and other business irregularities by both Vidal and Liberio.

After considering the referee's report and the evidence at trial, the court found, among other things, that the contract created the relationship of employer and employee; that under that agreement, appellant was "not to be held responsible to [Liberio] for losses resulting from mismanagement, bad judgment or neglect"; and that with certain modifications, including a reduction of net profits from $27,907.67 to $23,007.67, the referee's report showing a net shortage for which appellant was liable, was adopted by the court. Appellant was therefore held liable in the amount of $12,944.85 plus interest at 7 percent. Under the agreement the court also found appellant liable for $96 for a title search on the trust deed and $1,000 in attorney's fees. Foreclosure of the trust deed was ordered and a judgment for any deficiency entered.

This appeal is from the decree of foreclosure and deficiency judgment.

Appellant's primary argument is that the contract of

employment was illegal and therefore unenforceable. He contends that the agreement, on its face, holds him liable for "all losses occurring hereunder"; that this clause, coupled with his agreement to operate the business so that Liberio's salary would always be available while maintaining the inventories at their July 1, 1959, level made him in effect a guarantor of the success of the business; that the trial judge's interpretation excluding liability for "mismanagement, bad judgment or neglect" was unreasonable and erroneous; and that such a contract is a violation of public policy as well as Labor Code, sections 2802 and 2804.[1]

Assuming that appellant was in fact an employee as found by the trial court,[2] and assuming further that an employment contract whereby an employee is responsible for the success of the business is illegal, we think the trial judge correctly interpreted the agreement in excluding such responsibility. Civil Code, section 1643 provides: "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties."

The phrase "or any loss occurring hereunder", emphasized by appellant as creating broad liability, appears in paragraph (13). Paragraph (13) however, is clearly not intended to establish the liabilities of Vidal; rather it provides for the security, in form of a first deed of trust, on those liabilities established in paragraph (12). Under this construction, "other loss occurring hereunder" in paragraph (13) refers to "losses suffered . . . as a result of any breach or violation of this agreement. . . ." (In paragraph 12.)

---

[1]Labor Code, section 2802 provides: "An employer shall indemnify his employee for all that the employee necessarily expends or loses in direct consequence of the discharge of his duties . . . ."

Labor Code, section 2804 makes all contracts waiving the benefits of section 2802 null and void.

Appellant argues that an employee who is liable for ordinary business losses of his employer suffers losses within the meaning of section 2802, and a contract requiring indemnification of the *employer* is necessarily a subterfuge of that section. He also argues that as a matter of public policy employees as a protected class should not be allowed to undertake responsibility for the ordinary losses of the employer's business; that only employers, who provide the capital and means of production, should be required to take such risks.

[2]Prior to the trial there was some question as to the status of appellant as an employee, independent contractor, or possibly even a joint venturer. Since neither party challenges the findings of the trial judge on this matter, we assume it is agreed that appellant was an employee.

In addition, we think the trial court was correct in interpreting the contract in such a manner that appellant would not be liable for breach, where, through bad business judgment or fortuitous circumstance, he was unable to both maintain inventories and pay respondent $1,000 per month. The contract restricts the source of these funds to "Liberio's business bank account"; if no funds are available in this account, then no payment need be made.

Further, as a matter of proper appellate practice, we think that the argument of illegality is unavailable to appellant. The court below found that the business was run at a profit of over $23,000 during the period of Vidal's management, an amount more than sufficient to pay Liberio's salary for 20 months. Moreover, this profit was computed on undisputed cost of sales figure which necessarily accounted for the maintenance of the proper inventory level. Appellant's contention that he *could* have been held liable if the business had been unsuccessful is academic, and any error in the interpretation of the contract was to his benefit. It is well established that "An appellate court will not review questions which are moot and which are only of academic importance." (*Keefer* v. *Keefer*, 31 Cal.App.2d 335, 337 [87 P.2d 856].) Neither will the court consider errors which are favorable to the appellant. (*Morgan* v. *Veach*, 59 Cal.App.2d 682, 694 [139 P.2d 976].)

Appellant, however, argues that the court erred in determining that the business had generated a $23,007.67 profit during his management. This figure is based on a percentage markup of 30.752 percent derived by respondent's accountant from various cost and retail inventories made by an inventory service during the course of Vidal's employment. The admitted cost of merchandise figure of $244,491.94 plus the markup yields gross receipts of $319,678.10. Appellant, however, insists that the proper gross receipt figure is $306,341.17. The latter is the figure actually reflected on the books of Nancy's.

To show error, appellant cites the Uniform Business Records as Evidence Act (Code Civ. Proc., §§ 1953e-1953h) and in particular 1953f. His reliance on these sections, however, is ill taken. The act in no way purports to control the discretion of the finder of fact in making an ultimate determination of the facts on the basis of evidence admitted at trial; the only function of these sections is to guide the trial judge in his determination of what shall be competent evidence for the purpose of admission in the first instance. (See

*Ducat* v. *Goldner*, 77 Cal.App.2d 332, 337-338 [175 P.2d 914].)

In the case at bench, the appellant's method of computation was submitted to the fact-finder, not only by way of the referee's report, which clearly set forth appellant's accounting, but through the direct testimony of appellant's accountant at trial. The finding of the trial court is binding on us.

Moreover, the referee recommended that gross receipts be computed according to respondent's method and the court agreed. Determination of the gross receipts of the business was clearly a question of fact, and in view of the abundant evidence of the unreliability of the books of the business, we cannot say that the court abused its fact-finding powers.

Appellant's other contentions are on evidentiary matters of a minor nature, and are without merit.

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.