ZELINSKI v. BECKER.

1. COVENANTS—RESTRICTION TO USE FOR ONE-FAMILY HOUSES.
   Restriction of use of lots in unrecorded plat to one-family houses, which was included in all sales contracts and deeds from common grantor to all lots except to defendant's grantor but of which restriction he had notice before purchasing his property, was uniformly applicable to all lots in the plat.

2. INJUNCTION—EVIDENCE—KNOWLEDGE OF RESTRICTIVE COVENANT.
   Where defendant piano dealer, while negotiating for lot in unrecorded plat, told seller that he would build a $15,000 to $20,000 home in which he could display a piano to advantage in the right setting, defendant's testimony in suit to enjoin him from violating one-family dwelling restriction by erecting retail store, storage room and repair shop in conjunction with living quarters that he had no knowledge of the restrictive covenant until he received his deed after construction was commenced *held*, not entitled to credence.

3. COVENANTS—RECIPROCAL NEGATIVE EASEMENTS—GENERAL PLAN.
   Building restrictions limiting use of property in unrecorded plat to construction of one-family dwellings only are in the nature of reciprocal negative easements, and may be created upon a division and conveyance in severalty to different grantees, of an entire tract, and if general plan has been maintained from its inception and so understood, accepted, relied on, and acted upon by all in interest, it is binding and enforceable on all *inter se*, goes with the land and is equally binding upon all purchasers with notices notwithstanding some lots may have written restrictions imposed upon them and some not.

4. SAME—CONSTRUCTION OF RESTRICTIONS.
   Covenants restricting the erection of any building except for dwelling house purposes are construed to apply to the use as well as to the character of the building.

Definition of a negative easement, see 5 Restatement, Property, § 452.

5. INJUNCTION—VIOLATION OF RESTRICTIVE COVENANTS.

Property owners who have not themselves violated building restrictions are entitled to an injunction against violation of such restrictions contained in their deeds.

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE—BUILDING RESTRICTION VIOLATION—ZONING ORDINANCE.

Where injunction is granted to stop erection of combination store, repair shop and dwelling on lots restricted to use for one-family dwelling houses only, because it violated building restriction, whether or not such a structure is also in violation of zoning ordinance is not determined.

7. REFORMATION OF INSTRUMENTS—DEEDS—BUILDING RESTRICTION VIOLATION—INJUNCTION.

Where defendant is enjoined from erection of combination store, repair shop and dwelling on lots restricted to use for one-family dwelling houses only, because it was in violation of building restriction applicable to such lots, he is not entitled to have deed, received after construction was started, reformed so as to delete such restriction.

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted April 10, 1947. (Docket No. 58, Calendar No. 43,694.) Decided May 16, 1947.

Bill by Bernard Zelinski and others against Leon Becker to enforce building restrictions. Decree for plaintiffs. Defendant appeals. Affirmed.

*Fred P. Geib,* for plaintiffs.

*Lilly, Luyendyk & Snyder* and *Linsey, Shivel, Phelps & Vander Wal,* for defendant.

NORTH, J. Plaintiffs, being owners of properties located within a restricted and zoned area wherein defendant's property is also located, instituted this chancery suit and sought to have defendant restrained from erecting a building on his property

which plaintiffs alleged was being erected and was to be used in part as a retail store in violation of the restrictions and the zoning ordinance. Plaintiffs were decreed the relief sought. Defendant has appealed.

The area in question is located in the city of Grand Rapids. Defendant's parcel is known as 1853 Lake Michigan Drive, N. W. It has a frontage of 150 feet on the Lake Michigan Drive and an average depth of approximately 191 feet. He obtained title to this property by deed dated March 19, 1946. His deed contained a clause of which the pertinent part reads: "This deed is given subject to the following restrictions. Any dwelling to be erected thereon shall be a one-family house."

The area within which the properties of these litigants are located, formerly known as the Wright farm consisting of 40 acres, was a part of the estate of Henry Smith, deceased. Plaintiff, Walter Perschbacher, and one Mr. Wylie, as co-executors of Henry Smith's estate, were charged with the duty of disposing of decedent's real estate holdings. They caused a plat of 30 lots to be made of a portion of the 40-acre parcel. This plat was never recorded or formally dedicated, but it was used in making sales of the platted lots by being exhibited to prospective purchasers to enable them to determine the location, size, et cetera, of any parcel in which they might be interested. It was so used by Mr. Perschbacher in making the sale of the two lots purchased by defendant Leon Becker. "For convenience" in conveying the platted lots title to at least some of them, including the two lots conveyed to the defendant, was placed in Emily M. Harmsen. In consequence thereof she was the grantor in defendant's deed.

Under the record in this case there can be no question that the dwelling or structure which defendant has undertaken to build upon his lots is something more and entirely different from a "one-family house." In part the structure is designed as a family dwelling, but at least 50 per cent. of the first floor space in this structure is designed and intended to be used by defendant as a means of carrying on his business. The business of defendant is selling pianos, incident to which he makes exchanges by taking in used pianos, and he keeps on hand a stock of merchandise of that character. The plans for the structure which he proposes to erect provide for a "studio" or salesroom, 21 x 50 feet, for storage room in the basement, 20 x 48 feet, for a repair shop, a loading platform, a freight or hoisting elevator, and for a large window in the front of the structure evidently for display purposes. In short, defendant's proposed structure is of such a character that there can be no question about the correctness of the trial court's decree granting injunctive relief if, under the circumstances of this case, the restrictive clause in his deed is enforceable against defendant.

The restrictive clause was not included in the conveyance to defendant's grantor, nor was it at any time prior thereto contained in the chain of title to defendant's lots. But the record discloses that with the exception of a few triangular pieces which were not salable the restriction was placed in each of the sales contracts or deeds to the other lots in this plat, all of which have been sold. It thus appears that title to each of the building lots in this plat comes from a common grantor and in each of them the noted restriction is contained. In this manner the restriction became uniformly applicable to each of the lots. While the restriction did not

appear in the abstract of title to defendant's lots
up to and including the deed by which defendant's
grantor took title, nonetheless there is testimony in
the record that defendant was definitely informed
of this restriction prior to the time of his purchase.
Walter Perschbacher, who negotiated the sale of the
two lots to defendant, testified that prior to the
sale: "I told him (defendant) as I have indicated,
what the restrictions were, about the price restric-
tion, that no dwelling shall be built for less than
$6,000, one-family house." The extent of the under-
standing between defendant and the sales agent was
that if defendant purchased the property and erected
a house thereon there would be no objection to his
negotiating in his home with prospective purchasers
of pianos. Perschbacher, the sales agent, testified:

"Yes, he told me he would want the right to sell
pianos up there in that location and he told me he
would build a beautiful home, costing between fif-
teen and twenty thousand dollars, and I said to him I
would like to see that kind of structure built there,
and I wouldn't have any objection to selling pianos
or displaying a piano or two in a nice living room.
* * * I was perfectly willing at that moment
and still am, for the good of this plat, to permit a
man to display one or two pianos in a nice living
room. * * * He just talked about his building a
beautiful fifteen, twenty thousand dollar home, a
place where he could display to advantage in the
right setting a piano. * * *

"I had no information from Mr. Becker nor from
anyone else to indicate he was going to have a sub-
stantial sized loading platform in connection with
it. I didn't get that information until Mr. Johnson
and Mr. Zelinski (owners of lots in the plat) came
to my office to protest what was going on, that was
the first I knew that there was anything going on
that was a betrayal of my confidence with Mr.

Becker. I had no information before these neighbors came to protest that there was to be a freight elevator in this structure, nor that a substantial part of it was to be used for the purpose of a repair shop, nor that any portion was to be used for storing pianos."

It is obvious that the structure defendant seeks to build is altogether a different type than that to which he referred when negotiating for the purchase of the property. We are mindful that defendant testified he had no knowledge of the restrictive covenant appertaining to the lots in this area until he read the same in the deed which he received shortly after March 21, 1946, and by which time the foundation for his building had been partially constructed. However, careful consideration of the whole record results in our being unable to give credence to defendant's testimony that he had no knowledge of the restriction.

"The law is well settled that building restrictions of the character shown are in the nature of reciprocal negative easements, and may be created upon a division, and conveyance in severalty to different grantees, of an entire tract. That a portion of the conveyances do not contain the restrictions will not defeat the same. Although some of the lots may have written restrictions imposed upon them and others not, if the general plan has been maintained from its inception, if it has been understood, accepted, relied on, and acted upon by all in interest, it is binding and enforceable on all *inter se.* It goes with the land, and is equally binding on all purchasers with notices." *Allen* v. *City of Detroit,* 167 Mich. 464, 469 (36 L. R. A. [N. S.] 890).

"Covenants restricting the erection of any building except for dwelling house purposes are construed to apply to the use as well as to the character of the building and in strictly residential neighbor-

hoods where compliance therewith has always been had, nullification of the restrictions is deemed a great injustice to the owners of the property.

"Courts protect property owners seeking to enjoin violation of restrictive covenants contained in their deeds where the plaintiffs have not themselves violated restrictions in the enjoyment of their homes and holdings." *Wood* v. *Blancke* (syllabi), 304 Mich. 283.

Because in our judgment the portion of the record hereinbefore reviewed is decisive of decision, we deem it unnecessary to pass upon appellees' further contention that defendant's structure is being erected in violation of the Grand Rapids zoning ordinance applicable to this area, and that the trial judge correctly so held.

While by cross bill appellant sought reformation of his deed by having the above-noted restriction deleted, in view of our holding as hereinbefore expressed, appellant is not entitled to such relief.

The decree in the trial court wherein the injunctive relief sought by plaintiffs was granted "until and unless said structure shall be made to conform to the restrictions of said deed" is affirmed. Appellees will have costs of this Court.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.