HARRY C. HOGUE ET AL., APPELLANTS AND CROSS-APPELLEES,
v. VIRGIL F. DREESZEN ET AL., APPELLEES AND
CROSS-APPELLANTS.

73 N. W. 2d 159

Filed November 18, 1955.　No. 33788.

*Frederick J. Patz* and *Sterling F. Mutz,* for appellants.

*William L. Walker* and *Earl Ludlam,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This action was brought to enjoin the construction of a building which the plaintiffs contend was being carried out in violation of restrictive covenants. Issues were made and trial was had. The trial court held that the building being constructed was not in violation of the restriction and that the restriction was valid and binding.

Plaintiffs are owners of property adjoining that of defendants. They appeal from a denial of relief. Defendants appeal from the decree insofar as it holds the restriction to be valid and binding. We affirm the judgment of the court holding the restriction to be valid and binding. We reverse that part of the decree which held that the building was not in violation of the restriction, and remand the cause with directions to issue a mandatory injunction.

In October 1917, the National Security Investment Company and other owners filed a plat to East Lawn Terrace. This subdivision consisted of 14 blocks lying south of A Street and west of Fortieth Street in the city

of Lincoln. The western border of the subdivision was halfway between Thirty-third and Thirty-fifth Streets. West of that to Thirty-third Street was the Marydell Subdivision. West of Thirty-third Street was an addition known as Perkins Addition. The National Security Investment Company acquired a part of that addition in December 1917 and in June 1919 replatted that land as Block 15, East Lawn Terrace. It was physically separated from the 1917 dedicated East Lawn Terrace Subdivision by the 300-foot Marydell Addition and Thirty-third Street.

Defendants own Lot 1, Block 1, of East Lawn Terrace, holding by mesne conveyances from the National Security Investment Company. This lot is on the corner of Fortieth and A Streets.

The deed to the first grantee was for Lots 1, 2, and 3. It contained the following provision: "This conveyance is made with the express understanding that no store, public stable, wood yard, manufacturing establishment, laundry, factory, warehouse or shop shall be erected upon said lots; that no more than one dwelling shall be erected upon any one lot, and no dwelling house erected upon the within described property shall cost less than Twenty-five Hundred Dollars; that no, building shall be moved on to said lots * * *."

Plaintiffs are the owners by mesne conveyances of Lot 24, Block 1, which adjoins the defendants' lot on the south. The deed to the first grantee of this property contained the following provision: "This conveyance is made with the express understanding that no store, public stable, wood yard, manufacturing establishment, laundry, factory, warehouse or shop shall be erected upon any one lot, and no dwelling house erected upon the within described property shall cost less than Twenty-five Hundred Dollars: and no building shall be moved on to said lots * * *."

It appears that provisions of similar import were placed in all of the deeds conveying the lots in Blocks

1 to 14 of East Lawn Terrace, except as to six lots in Block 3, which were not owned by the National Security Investment Company.

It further appears that in the intervening years substantially all of the lots in all of the 14 blocks of East Lawn Terrace have been improved with single unit dwellings. Several owners testified that they bought and improved their property with knowledge of the restrictions and in reliance thereon. The 14 blocks consist of a compact restricted residential area.

Defendant testified from hearsay that some occupant of a residence in this addition either sold or made radio parts, operating out of his basement. Defendant also testified about one owner who had closed the front of an attached garage, converted it into a room, and operated a beauty parlor there.

It also appears that across the street, north and east of Fortieth and A Streets, there are business buildings.

There is evidence that in several of the conveyances of lots in Block 15, East Lawn Terrace, there were inserted restrictions such as above set out. In the intervening years, Block 15 has been changed into largely a commercial area. In doing so, it does not appear whether the restrictions were removed, waived, or ignored.

The defendants purchased their property in February 1953. It was then unimproved. Thereafter they prepared the plans for a building on the lot. The outside dimensions were to be 26 feet 6 inches wide by 40 feet long, with flat roof, and about 9 feet high. It was to contain three rooms with toilet and heating facilities. One of the rooms was to open on Fortieth Street, with a door and wide window. Two other rooms had doors facing the corner of Fortieth and A Streets, with wide windows facing the streets. Thereafter they secured on March 1, 1954, a building permit from the city authorizing the construction of the building "to be used as Dental & Barber Shop." Either that day or the next

day the defendants set up the lines for foundation excavation. Plaintiffs and other property owners in the block immediately protested to defendants, and advised them of the restrictions. Defendants replied that they knew of the restrictions and would observe them, but that they had a building permit and authority to proceed with the building.

On March 3, 1954, defendants started to dig the footings. Plaintiffs and others again protested the construction. On March 6, 1954, defendants had five or six rows of concrete blocks laid on two sides of the building when this action was started.

Defendants continued the construction. On April 9, 1954, a restraining order was issued. Defendants testified that they stopped construction at that time. When construction was stopped the exterior portion of the building was completed, the roof was on, and the doors and windows were not in.

There is no evidence that the lot of defendants was not suitable for residence purposes. It appears that the remaining lots in the block were so improved and used. The evidence is that it was more valuable for business purposes and that defendants bought it and intended to so use it, subject to the restrictions and zoning ordinances of the city.

There is also evidence, undisputed, that the construction and use of the building proposed by defendants would materially depreciate the value of the property of plaintiffs and other residence owners in the block involved.

At the conclusion of the trial, plaintiffs secured leave and amended the prayer of their petition to ask for a mandatory injunction.

While the case was under submission, defendants secured leave to reopen the trial and offered the evidence about the platting and use of the land in Block 15, East Lawn Terrace, and about the beauty shop.

Defendants' cross-appeal is predicated on the proposi-

tion that the restrictions have become obsolete and invalid because of a change in character of the neighborhood and acquiescence in violation of the restrictions, and that the plaintiffs are barred by laches from maintaining the action.

There is no evidence that the restrictions have become obsolete. The evidence is to the contrary. The charge of a change in the character of the neighborhood rests upon the use of the property north and east of the property here involved for business purposes. The terms and conditions of the title to those properties is not shown. Obviously, there must be a dividing line somewhere between restricted and nonrestricted areas, or the restrictions would be of no force. The situation here is no exception to that situation.

The charge of an acquiescence in violation of the restrictions rests upon the beauty parlor and radio shop evidence and the use of the property in Block 15, East Lawn Terrace.

The use of the property in Block 15, East Lawn Terrace, a different subdivision some 7 blocks from this property, does not affect this situation. There is the circumstance that a corporation of the same name was an owner in part in both dedications and the circumstance that the subdivision consisting of Block 15, East Lawn Terrace, is of the same name as the earlier subdivision. Those circumstances do not affect the problem we have here. The hearsay statement of the radioman's operations is not of importance. The evidence as to the beauty parlor is little more than hearsay, save that there is in evidence a picture of the outside of the room with a picture in the window of a lady with her hair dressed in style. Knowledge of these activities, their duration, and their extent, is not shown. Whether or not they constitute violations of the restrictions is not for decision here. These matters do not furnish a foundation for an equity court to set aside the restrictions imposed in the deeds here involved. There is no

showing of failure to act on the part of the plaintiffs but in any event, "Plaintiffs are not estopped from preventing a most flagrant violation of the restrictions on account of their theretofore failure to stop a slight deviation from the strict letter of such restrictions." Boston-Edison Protective Assn. v. Goodlove, 248 Mich. 625, 227 N. W. 772.

In the above case, it was also held: "The change in the character of certain sections of property bordering on a street does not affect a large neighborhood bordering on that street, where the lot owners in such neighborhood have strictly adhered to the restrictive covenants in their deeds."

The cross-appeal is denied.

This brings us to the matter of plaintiffs' appeal as to whether or not the building being erected by defendants is in violation of the restriction.

In Wright v. Pfrimmer, 99 Neb. 447, 156 N. W. 1060, L. R. A. 1917A 323, we held: "When similar covenants are inserted in deeds from the common grantor pursuant to a general plan of improvement or development made public by the grantor, each grantee has such an interest in the restrictive covenants in the other deeds, in view of the general plan under which he purchased, that he may enforce such covenants against other grantees. When a general plan of improvement has not been published by the grantor, one grantee can enforce the covenants against another only when they were intended for the benefit of adjacent lots. The intention to give such right to enforce the covenants must be expressed in the deeds themselves; or must be evident from the covenants in the deeds when viewed in the light of the surrounding circumstances." See, also, Dundee Realty Co. v. Nichols, 113 Neb. 389, 203 N. W. 558.

The Supreme Court of Minnesota has stated the rule in this wise: "* * * where the owners of a tract of land have platted the same into many lots and formed

and carried out a plan to sell the lots subject to covenants restricting them to the construction of homes of a certain character, equity will protect the rights of other grantees who accepted deeds in the same locality with similar restrictions." Rose v. Kenneseth Israel Congregation, 228 Minn. 240, 36 N. W. 2d 791. See, also, 14 Am. Jur., Covenants, Conditions and Restrictions, § 319, p. 656.

Clearly the plaintiffs here are entitled to the relief sought if the building being constructed is in violation of the restrictive covenant.

The trial court held that a barber shop was not a shop within the meaning of the restriction. We find it a bit difficult to follow the reasoning and conclusion of the trial court.

We place the decision on a broader ground.

The Supreme Court of Michigan has held that a covenant of the character involved here is to be construed "in connection with the surrounding circumstances, which the parties are supposed to have had in mind at the time they made it, the location and character of the entire tract of land, the purpose of the restriction, whether it was for the sole benefit of the grantor or for the benefit of the grantee and subsequent purchasers, and whether it was in pursuance of a general building plan for the development and improvement of the property. If there was a general building scheme the purpose of which was to restrict this district to single residences, it matters not how it is expressed in the covenant or what the covenant may be called. However, so far as the purpose is definitely stated in the covenant that purpose should control." Library Neighborhood Assn. v. Goosen, 229 Mich. 89, 201 N. W. 219.

The rule is stated as follows: "Restrictions as to the erection or use of buildings or other structures and improvements will be so construed as, if possible, to effectuate the intention of the parties * * *." 26 C. J. S., Deeds, § 164, p. 520.

. The restriction, of course, applies to a building which would normally be useable and used for a "store," "manufacturing establishment," "laundry," "factory," "warehouse," or "shop." That is a negative covenant. It is perfectly obvious that the building being built by defendants, subject only to the limitations of space, could be quite readily used for any of those purposes. More important is the fact that it is obviously not designed or being built for what would be normal residence purposes.

The restriction bars a "public stable." It is a matter of common knowledge that when this language was used, private stables in connection with residences were quite common, but public stables were not. The restriction permits a "dwelling house" provided it does not cost less than $2,500. Again it is a matter of common knowledge that at that time a substantial dwelling house could be constructed at a cost of $2,500.

The restriction in the initial deed to the lot which defendants now own provides "no more than one dwelling shall be erected upon any one lot." That deed conveyed Lots 1, 2, and 3 in Block 1. The above provision is not in the initial deed to the property which plaintiffs own, but that deed conveyed only one lot.

Considering the various provisions of the restrictions as a whole, we think that the restrictions were intended to and had the purpose and effect of limiting the use of the lots to dwelling houses, consisting of one dwelling house on each lot. The affirmative provisions as to what can be built are clear; the negative provisions simply reinforce the permissive use construction. Moreover, it is clear from this record that the owners of these lots during the last third of a century have so understood, construed, and followed the provisions.

Paraphrasing our language in Dundee Realty Co. v. Nichols, *supra,* the building being constructed by the defendants is a clear and direct violation of the letter as well as the spirit of the restrictive covenant. Irre-

parable injury is shown, "thus creating a condition which is appealing to a court of equity, in the exercise of its extraordinary power. The relief sought by plaintiffs is fair, equitable, and just."

In Boston-Edison Protective Assn. v. Goodlove, *supra,* the court held: "A covenant restricting the erection of any building, except for dwelling house purposes, applies to the use as well as to the character of the building."

The rule is stated in 43 C. J. S., Injunctions, § 87, p. 595: "A mandatory injunction may be issued directing the removal or alteration of a building or structure erected in violation of a restrictive covenant." See, also, 14 Am. Jur., Covenants, Conditions and Restrictions, § 352, p. 672.

Plaintiffs are entitled to a mandatory injunction requiring the defendants to raze and remove the structure as erected, or requiring alteration if the portion of the building constructed can be altered, so as to comply with the restrictions as here construed. See Boston-Edison Protective Assn. v. Goodlove, *supra.*

The judgment of the trial court is accordingly affirmed in part, and in part reversed and the cause remanded with directions to issue a mandatory injunction in accord with this opinion directing the defendants, within 60 days from the issuance of the writ to either raze and remove the structure as erected or to alter the building as constructed so as to comply with the restrictions as here construed.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.