2002 UT App 125

**HOLLADAY DUPLEX MANAGEMENT COMPANY, L.L.C., a Utah limited liability company, Plaintiff and Appellant,**

v.

**Dale G. HOWELLS and Lois Howells, Trustees of the Howells Family Trust U/A/D 06/17/91; et al., Defendants and Appellees.**

**No. 20010369–CA.**

Court of Appeals of Utah.

April 25, 2002.

Lincoln W. Hobbs and Akiko Kawamura, Hobbs & Adondakis LC, Salt Lake City, for Appellant.

H. Ralph Klemm, Bountiful, for Appellees.

Before BENCH, DAVIS, and ORME, JJ.

## OPINION

DAVIS, Judge.

¶1 Plaintiff Holladay Duplex Management Company, L.L.C., a Utah limited liability company, argues the trial court erred in ruling as a matter of law that a restrictive covenant[1] contained in deeds to property in the Ellison Woods subdivision is unambiguous.[2] We affirm.

¶2 Deeds and restrictive covenants are interpreted in the same manner as con-

not violate the terms of the covenant. We conclude that, even if Plaintiff preserved this issue, because the covenant clearly and unambiguously limits permitted residences to one single family home, duplexes or "twin homes" are not allowed.

Plaintiff also argues the court erred in failing to reconsider, during trial, its earlier ruling that the covenant was unambiguous. Nevertheless, Plaintiff conceded at oral argument that we owe the trial court's conclusion no deference on the issue of whether the covenant is ambiguous. Thus, even if the trial court erred in refusing to reconsider its ruling either before or after judgment, such error would be harmless error because we, like the trial court, conclude that the restrictive covenant is clear and unambiguous. *See* Utah R. Civ. P. 61 ("[N]o error or defect in any ruling or order ... is ground for granting a new trial or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

---

1. The covenant provides that:

   The Grantee, his heirs, successors and assigns will not erect or permit to be erected on the lot or lots above described and purchased by him, any building or construction to be used for any purpose other than a one family dwelling house, excepting only a barn, garage and the customary outhouses, and that no dwelling house shall be erected or permitted to be erected on said lot or lots which shall cost less than $1,000.00 and that a dwelling house costing less than $5,000.00 shall be set at least 100 feet back from the street frontline. All dwelling houses built on front 100 feet of said lot or lots shall cost at least $5,000.00 and shall be set back at least 20 feet from front line of lot. And all outbuildings such as coops, sheds, privies, etc., and not including garages attached to house, shall be set back at least 125 feet from the street frontline.

   The covenants of different property owners are the same excepting minor differences that have no bearing on the outcome of this appeal.

2. Plaintiff's complaint for declaratory judgment also asked the court, if it upheld the covenant, to rule that Plaintiff's proposed construction would

tracts. *See Swenson v. Erickson,* 2000 UT 16,¶ 11, 998 P.2d 807; *Canyon Meadows Home Owners Assoc. v. Wasatch County,* 2001 UT App 414,¶ 7, 40 P.3d 1148; *Capital Assets Fin. Servs. v. Lindsay,* 956 P.2d 1090, 1093 (Utah Ct.App.1998). "Interpretation of contract terms is a question of law." *Canyon Meadows,* 2001 UT App 414 at ¶ 7, 40 P.3d 1148; *see also Dixon v. Pro Image, Inc.,* 1999 UT 89,¶ 14, 987 P.2d 48. We review the trial court's rulings on questions of law for correctness. *See Canyon Meadows,* 2001 UT App 414 at ¶ 7, 40 P.3d 1148. It is well settled that whether a contract is clear and unambiguous or ambiguous and capable of two or more reasonable interpretations is a question of law properly resolved by the court. *See Dixon,* 1999 UT 89 at ¶ 14, 987 P.2d 48; *Winegar v. Froerer Corp.,* 813 P.2d 104, 108 (Utah 1991); *Plateau Mining Co. v. Utah Div. of State Lands & Forestry,* 802 P.2d 720, 725 (Utah 1990). "Generally, unambiguous restrictive covenants should be enforced as written." *Swenson,* 2000 UT 16 at ¶ 11, 998 P.2d 807. "It is [a] court's duty to enforce the intentions of the parties as expressed in the plain language of the covenants." *Id.* at ¶ 19. "[S]uch language is to be taken in its ordinary and generally understood and popular sense, and is not to be subjected to technical refinement nor the words torn from their association and their separate meanings sought in a lexicon." *Freeman v. Gee,* 18 Utah 2d 339, 423 P.2d 155, 163 (1967).

█ ¶ 3 From our review of the restrictive covenant at issue here, we conclude that it is clear and unambiguous as written. It provides that the grantee takes the property subject to a restriction on the type of buildings that can be built on the property. The covenant speaks of limiting the types of buildings to "a one family dwelling house" and such other outbuildings as fit within the description: "a barn, garage and the customary outhouses." We see no ambiguity here. The purpose of the covenant, as expressed by its language, was to preserve the residential character of the development by limiting the types of buildings allowed to one family dwellings—what we now term single family homes.

¶ 4 Plaintiff argues that even if the covenant does limit the type of homes allowed, it is unclear whether the covenant limits the amount of homes allowed on a lot. Plaintiff points to the use of the plural "houses" in the second sentence of the covenant as expressing support for its position that more than one single family dwelling house may be placed on the same lot. From this, Plaintiff argues the entire covenant is ambiguous.

¶ 5 The covenant at issue is comprised of three sentences. The first sentence deals with what type of buildings are allowed, the minimum dollar value of a permitted dwelling house, and a minimum setback for "a dwelling house costing less than $5,000.00." The second sentence of the covenant further restricts the location of the main building, while the third restricts the locations for outbuildings. When read as a whole, as it must be, *see Dixon,* 1999 UT 89 at ¶ 14, 987 P.2d 48, the meaning is clear. The first sentence limits the type of building and the purpose to which it can be put. This first sentence speaks of "a one family dwelling house," and contains the singular "house" in two other places. Thus, when the parties were discussing the type and use of the permitted buildings they used the singular "house" exclusively; further, they wrote "a one family dwelling house" to specifically identify the type of home and its use, that is: one house, one family. *See Freeman,* 423 P.2d at 162 (" 'A restriction limiting the construction of a building on premises to *a dwelling house* means a building designed as a single dwelling to be used by one family.' " (citation omitted) (emphasis added)). The word "houses" does not appear until the second sentence of the covenant, and the singular form "house" appears after that in the third sentence. Moreover, the plural "houses" is used in conjunction with the phrase "lot or lots." Thus, despite Plaintiff's argument to the contrary, the use of the plural "houses" does not make the whole instrument ambiguous because the only reasonable interpretation is that this plural use of "houses" references multiple lots. Read together, we are convinced that the use of the plural "houses" in the second sentence of the covenant alone does not render the whole instrument ambiguous. *See Swenson,* 2000 UT 16

at ¶¶ 14–15, 998 P.2d 807 (reading multiple sections of a restrictive covenant together to divine the purpose and meaning thereof).

¶ 6 Plaintiff also argues that we should not read the indefinite article "a" as limiting the number of dwellings to one. Plaintiff points to *Lewis v. Spies*, 43 A.D.2d 714, 350 N.Y.S.2d 14 (1973), for the proposition that "a" may mean "any." The *Lewis* court cited the definition of "a" in the fourth edition of Black's Law Dictionary, and ruled that the use of the word "a" in a restrictive covenant did not limit to one the number of homes that could be built on the defendant's property. However, we note that the latest edition of Black's omits this definition for the word "a." Black's Law Dictionary 1 (7th ed. 1999). Moreover, the *Lewis* court primarily relied on the fact that there were twenty-three other deeds containing similar language to the covenant at issue in that case, and in all the others, "each of the deeds contained an additional clause which specifically limits the number of private homes (in most cases to one and in some to two) which could be constructed on the parcel conveyed." *Lewis*, 350 N.Y.S.2d at 14; *see also Pleasants Invs. Ltd. P'ship v. Department of Assessments & Taxation*, 141 Md.App. 481, 786 A.2d 13, 19–21 (2001) (rejecting property owners' argument that "a" meant "any" in tax exemption statute and distinguishing *Lewis v. Spies*, 43 A.D.2d 714, 350 N.Y.S.2d 14 (1973)). Thus, *Lewis* is easily distinguishable from the covenant at issue here, as are the other cases cited by Plaintiff in support of this argument.

¶ 7 The definition for "a" found in Webster's includes: "used as a function word before most singular nouns" and "used with a plural noun only if *few, very few, good many*, or *great many* is interposed." Webster's Third New Int'l Dictionary 1 (1986). Although Plaintiff is correct that the indefinite article "a" does not always mean one, in this case, we conclude that in the context it is used, "a" means *one*. *See Pleasants Invs.*,

786 A.2d at 20 (relying on context to conclude that the word "a" means one). The effect of accepting Plaintiff's reading of the covenant would be to allow any number of single family homes to be erected on a lot. "The drafters could not have intended such a result." *Swenson*, 2000 UT 16 at ¶ 16, 998 P.2d 807.

¶ 8 The use of the word "a," the use of the singular "house," and the underlying purpose of the covenant—to restrict construction and preserve the residential character of the development—convince us that the phrase "a one family dwelling house" means one single family home. *See Walker v. Haslett*, 44 Cal. App. 394, 186 P. 622, 624 (1919) (holding "a first class private residence" means one single family home); *Schadt v. Brill*, 173 Mich. 647, 139 N.W. 878, 879–81 (1913) (holding "a dwelling house with the usual appurtenances thereto" means one single family home); *Skillman v. Smathehurst*, 57 N.J. Eq. 1, 40 A. 855, 856–57 (N.J.Ch.1898) (holding "a private dwelling" excludes a duplex or apartment building).[3]

¶ 9 Affirmed.

¶ 10 WE CONCUR: RUSSELL W. BENCH and GREGORY K. ORME, Judges.

---

**3.** Plaintiff also argues that paragraph two of the judgment should be stricken because it does not reflect the jury verdict, and therefore, it was error to deny Plaintiff's motion to alter or amend or correct the judgment. This argument has no merit. All paragraph two does is recite that the covenant remains valid and enforceable with re-

spect to limiting construction to single family dwellings. As we have indicated above, the covenant clearly and unambiguously does this, and therefore, paragraph two properly reflects the outcome of the trial, the verdict of the jury, and the judgment of the court.